**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

ELIZABETH RODRIGUEZ-VEGA,
*Defendant-Appellant*.

No. 13-56415

D.C. Nos.
3:12-cv-01996-WVG
3:12-cr-02053-WVG

OPINION

Appeal from the United States District Court
for the Southern District of California
William V. Gallo, Magistrate Judge, Presiding

Argued and Submitted
July 7, 2015—Pasadena, California

Filed August 14, 2015

Before: Stephen Reinhardt, Ferdinand F. Fernandez,
and Richard R. Clifton, Circuit Judges.

Opinion by Judge Reinhardt

## SUMMARY[*]

### Habeas Corpus

Vacating a conviction of misdemeanor attempted transportation of illegal aliens, the panel held that the district court erred in failing to hold, upon a petition under 28 U.S.C. § 2255, that defendant's counsel was ineffective in failing to advise her that her plea agreement rendered her removal from the United States a virtual certainty.

The panel held that the district court applied the wrong legal standard in deciding whether counsel's representation fell below an objective standard of reasonableness because the law was clear on the immigration consequence of defendant's plea where the immigration statute expressly identified defendant's conviction as a ground for removal, rendering her removal practically inevitable. The panel held that the government's performance in including provisions regarding removal in the plea agreement, and the district court's performance at the plea colloquy, were irrelevant to the question whether counsel's performance was adequate. In addition, counsel's statements made after defendant had already pled guilty did not satisfy his duty to accurately advise her of the removal consequences of the plea before she entered into it.

The panel held that defendant satisfied the prejudice prong of the ineffective assistance of counsel test by showing a reasonable probability that, but for counsel's deficient

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

performance, she would have negotiated a different plea agreement not requiring her removal or, alternatively, would have gone to trial.

The panel also held that the district court did not abuse its discretion in failing to conduct a full evidentiary hearing. The panel vacated the conviction and remanded the case to the district court.

## COUNSEL

Doug Keller (argued), Federal Defenders of San Diego, California, for Defendant-Appellant.

Julia A. Cline (argued), Special Assistant United States Attorney; Bruce R. Castetter, Assistant United States Attorney, Chief, Appellate Section, Criminal Division; Laura E. Duffy, United States Attorney, San Diego, California, for Plaintiff-Appellee.

Rebecca Sharpless, Immigration Clinic, University of Miami School of Law, Coral Gables, Florida; Sejal Zota, National Immigration Project of the National Lawyers Guild, Boston, Massachusetts; Jeffrey L. Fisher, NACDL Amicus Committee, Stanford, California; Manual D. Vargas and Dawn Seibert, Immigrant Defense Project, New York, New York, for *Amici Curiae* National Association of Criminal Defense Lawyers, National Association for Public Defense, National Immigration Project of the National Lawyers Guild, Immigrant Defense Project, and Immigrant Legal Resource Center.

## OPINION

REINHARDT, Circuit Judge:

Elizabeth Rodriguez-Vega appeals the magistrate judge's denial of her 28 U.S.C. § 2255 petition[1] to vacate her conviction of misdemeanor Attempted Transportation of Illegal Aliens in violation of 8 U.S.C. § 1324(a)(2)(A). She asserts that she was deprived of effective assistance of counsel because her attorney failed to advise her that her plea agreement rendered her removal a virtual certainty, and that the court erred in dismissing her petition without holding an evidentiary hearing. We hold that the district court did not abuse its discretion in failing to conduct an evidentiary hearing, but that it did err in failing to hold that under the controlling law Rodriguez-Vega's counsel's assistance was ineffective. Accordingly, we order the conviction vacated.

## I.

Rodriguez-Vega was born in Mexico in 1989. She came to the United States with her family when she was twelve years old, and became a lawful permanent resident the following year. In 2012, she was arraigned on an Information charging her with felony Attempted Transportation of Illegal Aliens and Aiding and Abetting in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and (v)(II).

---

[1] Although the Judicial Code describes § 2255 petitions as "motions," 28 U.S.C. § 2255, we utilize the popular terms "petition" and "petitioner" for ease of reference. *See United States v. Howard*, 381 F.3d 873, 877 & n. 4 (9th Cir. 2004).

Rodriguez-Vega's attorney[2] initially presented her with a plea agreement requiring her to stipulate to removal following her criminal sentence. A section entitled "Stipulated Removal" provided that "[i]f defendant is not a United States citizen or national, . . . defendant agrees to an order of removal from the United States" following completion of her criminal sentence, and "waives any right to appeal, reopen or challenge the removal order." When Rodriguez-Vega rejected the agreement her attorney obtained a revised plea agreement that did not include the stipulation for removal upon completion of her sentence, reduced a $100 assessment to $25, and recommended a base offense level of 12 and downward departures of 2 points each for acceptance of responsibility and fast track. The revised plea replaced the stipulated removal provision with a provision entitled "Immigration Consequences," stating that

> Defendant recognizes that pleading guilty may have consequences with respect to her immigration status if she is not a citizen of the United States. . . . Defendant nevertheless affirms that she wants to plead guilty regardless of any immigration consequences that his [sic] plea may entail, even if the consequence is his [sic] automatic removal from the United States.

The final section of the plea stated that "Defendant has discussed the terms of this agreement with defense counsel and fully understands its meaning and effect." Both plea

---

[2] All references in this opinion to Rodriguez-Vega's counsel are to the attorney that represented her in her criminal case.

agreements were to a reduced charge of misdemeanor Transportation of an Illegal Alien.[3]

Rodriguez-Vega pled guilty to a single misdemeanor. At her plea colloquy, the magistrate judge[4] informed Rodriguez-Vega that "*potentially* you could be deported or removed, *perhaps*." (Emphasis added.) Later, at her sentencing hearing, Rodriguez-Vega's counsel, addressing the court, stated that "even though this is a misdemeanor, there is a high likelihood that she'll still be deported. It's still *probably* considered an aggravated felony for purposes of immigration law." (Emphasis added.) The district court sentenced Rodriguez-Vega to 60 days in custody followed by one year of supervised release. Fifteen days later, Rodriguez-Vega was issued a Notice to Appear, alleging that she was removable because her conviction qualified as an aggravated felony under 8 U.S.C. § 1227(a)(2)(A)(iii).

Rodriguez-Vega filed a petition to vacate her conviction under 28 U.S.C. § 2255 on the ground that her counsel provided ineffective assistance by failing to adequately advise her regarding the immigration consequence of her plea. In the alternative, she requested that the court order an evidentiary hearing. In support of her petition, Rodriguez-Vega filed a declaration denying that her counsel ever told her that her plea would cause her to be removed.

---

[3] The record does not contain the complete initial plea agreement offered to Rodriguez-Vega. However, the government does not contest Rodriguez-Vega's description on appeal of the first plea agreement as being the same as the second except as described in the above paragraph of the text.

[4] The parties stipulated that a magistrate judge could conduct all proceedings in the district court. *See* 28 U.S.C. § 636(c)(1).

The district court ordered an expansion of the record and supplemental briefing, and directed the government to file a declaration from Rodriguez-Vega's counsel. Her counsel stated in his declaration that

> [p]rior to Ms. Rodriguez [sic] guilty plea I had several conversations with here [sic] regarding potential immigration consequences. I explained to Ms. Rodriguez that there was a potential to be deported based on her immigration status. I explained to Ms. Rodriguez that . . . I believed she had a better chance with Immigration with a misdemeanor than a felony.

The district court denied the petition without holding any further hearing. It held that her counsel was required to advise his client only that her plea created a general risk of removal. The district court found this duty satisfied by his statement prior to Rodriguez-Vega's guilty plea that she faced a "potential" of removal, and by his statement at the sentencing hearing that she faced a "high likelihood" of removal. It also found that even assuming that counsel's performance was ineffective, Rodriguez-Vega was not prejudiced by that conduct. Rodriguez-Vega appeals.

## II.

To prevail on her claim of ineffective assistance of counsel, Rodriguez-Vega must demonstrate that her attorney's representation "fell below an objective standard of reasonableness," and that she suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).

**A.**

With respect to the ineffective performance prong, the district court erred because it applied the wrong legal standard. "When the law is not succinct and straightforward . . . , a criminal defense attorney need do no more than advise a noncitizen that pending criminal charges may carry a risk of adverse immigration consequences." *Padilla v. Kentucky*, 559 U.S. 356, 369 (2010). However, where the law is "succinct, clear, and explicit" that the conviction renders removal virtually certain, counsel must advise his client that removal is a virtual certainty. *Id.* at 368–69 ("[W]hen the deportation consequence is truly clear, . . . the duty to give correct advice is equally clear."); *United States v. Bonilla*, 637 F.3d 980, 984 (9th Cir. 2011) ("A criminal defendant who faces almost certain deportation is entitled to know more than that it is *possible* that a guilty plea could lead to removal; he is entitled to know that it is a virtual certainty.") (emphasis in original).[5]

Where the immigration statute or controlling case law expressly identifies the crime of conviction as a ground for removal, "the deportation consequence is truly clear." *Padilla*, 559 U.S. at 369. Here, as in *Padilla* and *Bonilla*, the immigration statute expressly identifies Rodriguez-Vega's conviction as a ground for removal. *See* 8 U.S.C. §§ 1101(a)(43)(N), § 1227(a)(2)(A)(iii); *see also Padilla*, 559 U.S. at 368 ("Padilla's counsel could have easily determined that his plea would make him eligible for deportation simply from reading the text of the statute"). Her conviction of a removable offense renders her removal

---

[5] Many opinions use the terms "removal" and "deportation" interchangeably.

"practically inevitable." *Padilla*, 559 U.S. at 363–64. Accordingly, we hold that Rodriguez-Vega's counsel was required to advise her that her conviction rendered her removal virtually certain, or words to that effect. *See Bonilla*, 637 F.3d at 984.

That Rodriguez-Vega might theoretically avoid removal under the family member exception for first-time offenders, *see* 8 U.S.C. § 1101(a)(43)(N), by receiving withholding of removal, *see* 8 U.S.C. § 1231(b)(3), or by qualifying for relief under the Convention Against Torture ("CAT"), *see* 8 C.F.R. § 1208.16(c), does not alter our conclusion that on the record before us her removal was virtually certain.[6]

We also reject the government's arguments that counsel's performance was not ineffective because Rodriguez-Vega received notice that she might be removed from a provision in the plea agreement and the court's plea colloquy under Federal Rule of Criminal Procedure 11. The government's performance in including provisions in the plea agreement, and the court's performance at the plea colloquy, are simply irrelevant to the question whether *counsel's* performance fell below an objective standard of reasonableness. *See Padilla*, 559 U.S. at 371 (quoting *Hill v. Lockhart*, 474 U.S. 52, 62 (1985) (White, J., concurring in the judgment) ("It is quintessentially the duty of *counsel* to provide her client with available advice about an issue like deportation and the failure to do so 'clearly satisfies the first prong of the *Strickland* analysis.'" (emphasis added))); *see also Libretti v. United States*, 516 U.S. 29, 50–51 (1995); *United States v.*

---

[6] *Bonilla* described the likelihood of the appellant's removal as "virtually certain" notwithstanding the availability of withholding and CAT relief, which is not surprising given how rarely such relief is granted.

*Urias-Marrufo*, 744 F.3d 361, 369 (5th Cir. 2014) ("It is counsel's duty, not the court's, to warn of certain immigration consequences, and counsel's failure cannot be saved by a plea colloquy.")

Nor do counsel's statements made after Rodriguez-Vega had already pled guilty, that she faced a "high likelihood" of removal, satisfy his duty to accurately advise his client of the removal consequences of a plea *before* she enters into it. *See Padilla*, 559 U.S. at 364 ("*Before* deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel'" (emphasis added)); *Lafler v. Cooper*, 132 S.Ct. 1376, 1384 (2012) ("*During* plea negotiations defendants are 'entitled to the effective assistance of competent counsel.'" (citation omitted) (emphasis added)). This is because, had she been properly and timely advised, Rodriguez-Vega could have instructed her counsel to attempt to negotiate a plea that would not result in her removal. *See Padilla*, 559 U.S. at 373 ("Counsel who possess the most rudimentary understanding of the deportation consequences of a particular criminal offense may be able to plea bargain creatively with the prosecutor in order to craft a conviction and sentence that reduce the likelihood of deportation, as by avoiding a conviction for an offense that automatically triggers the removal consequence."); *Vartelas v. Holder*, 132 S.Ct. 1479, 1492 n. 10 (2012) ("Armed with knowledge that a guilty plea would preclude travel abroad, alien[ ] [defendants] might endeavor to negotiate a plea to a nonexcludable offense"); *see also Hernandez-Cruz v. Holder*, 651 F.3d 1094, 1110–11 (9th Cir. 2011) (discussing a plea agreement in which "[t]he state secured convictions on the charges that are punished more harshly under state law without incurring the expense and hassle of a trial" and the defendant "agreed to plead guilty to a charge that, although

more serious, had a smaller chance of causing adverse immigration consequences"). "In order that the[] benefits [of plea bargaining] can be realized, however, criminal defendants require effective counsel *during* plea negotiations. Anything less . . . might deny a defendant effective representation by counsel at the only stage when legal aid and advice would help him." (Internal quotation marks omitted) (alteration in original) (emphasis added). *Missouri v. Frye*, 132 S.Ct. 1399, 1407–08 (2012).

The undisputed evidence clearly demonstrates that counsel's performance was constitutionally ineffective. According to counsel's own declaration, before Rodriguez-Vega pled guilty he never informed her that she faced anything more than the mere "potential" of removal. Because the immigration consequences of her plea were clear and her removal was virtually certain, we hold counsel's performance constitutionally ineffective. *Strickland*, 466 U.S. at 688.

**B.**

The government also argues that Rodriguez-Vega did not satisfy the prejudice prong of the ineffective assistance of counsel test. To satisfy the prejudice prong, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" is a standard of proof "sufficient to undermine confidence in the outcome" and is "somewhat lower" than a preponderance of the evidence. *Id.* "[T]o obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 559 U.S. at 372. Where ineffective assistance leads a

petitioner to accept a plea bargain, a different result means that "but for counsel's errors, [Rodriguez-Vega] would either have gone to trial or received a better plea bargain." *Howard*, 381 F.3d at 882.

**1.**

Rodriguez-Vega alleges that she would not have accepted the plea had she known she would be removed. Instead, she declares, "I would have insisted on A) proceeding to trial; or B) an offer that would not have caused my deportation."

A petitioner may demonstrate that there existed a reasonable probability of negotiating a better plea by identifying cases indicating a willingness by the government to permit defendants charged with the same or a substantially similar crime to plead guilty to a non-removable offense. *Cf. United States v. Raya-Vaca*, 771 F.3d 1195, 1209 (9th Cir. 2014) (statistical evidence regarding proportion of aliens receiving relief in conjunction with individualized evidence supports finding of a plausible basis for alien's relief). In her opening brief, Rodriguez-Vega cites four recent cases from the Southern District of California in which defendants originally charged with Transportation of Illegal Aliens in violation of 8 U.S.C. § 1324 pled guilty to being an accessory after the fact in violation of 18 U.S.C. § 3.[7] These cases

---

[7] *See* Information, *United States v. Gonsalez-Sanchez*, No. 3:13-CR-00477-RBB (S.D. Cal. Feb. 7, 2013), ECF No. 14; Judgment, *Gonsalez-Sanchez*, No. 3:13-CR-00477-RBB (S.D. Cal. Mar. 8, 2013), ECF No. 32; Information, *United States v. Camey-Arriaza*, No. 3:14-CR-01449-WVG (S.D. Cal. May 27, 2014), ECF No. 20; Judgment, *Camey-Arriaza*, No. 3:14-CR-01449-WVG (S.D. Cal. June 11, 2014), ECF No. 38; Information, *United States v. Godinez-Aviles*, No. 3:14-cr-01531-DHB (S.D. Cal. June 3, 2014), ECF No. 28; Judgment, *Godinez-Aviles*, No.

demonstrate a reasonable probability that, but for counsel's deficient performance, Rodriguez-Vega could similarly have negotiated a different plea agreement not requiring her removal.

A petitioner may also demonstrate a reasonable probability by showing that she settled on a charge in a purposeful attempt to avoid an adverse effect on her immigration status. *See Kovacs v. United States*, 744 F.3d 44, 53 (2d Cir. 2014) (finding petitioner's "single-minded focus in the plea negotiations [on] the risk of immigration consequences" and evidence that he "settled on [the felony charge] for the sole reason that [counsel] believed it would not impair [petitioner's] immigration status. . . . show[ed] a reasonable probability that he could have negotiated a plea with no effect on his immigration status."). Rodriguez-Vega rejected an initial plea bargain containing a stipulated removal provision, and accepted the revised plea bargain only after this provision had been removed. In addition, counsel's declaration states that his client accepted the revised plea after he advised her that "she had a better chance with Immigration with the misdemeanor conviction" than with the charged felony. These facts indicate that Rodriguez-Vega settled on the misdemeanor charge with the stipulated removal provision deleted specifically in order to limit her chances of removal and, consequently, showed a reasonable probability that, but for counsel's failure to provide adequate advice, she would have negotiated a plea bargain not requiring her removal.

3:14-cr-01531-DHB (S.D. Cal. July 1, 2014), ECF No. 40; Indictment, *United States v. Jarillo-Ochoa*, No. 3:12-cr-01818-AJB (S.D. Cal. May 9, 2012), ECF No. 17; Judgment, *Jarillo-Ochoa*, No. 3:12-cr-01818-AJB (S.D. Cal. Feb. 5, 2013), ECF No. 87.

**2.**

Alternatively, Rodriguez-Vega has demonstrated prejudice by showing a reasonable probability that, even in the absence of a more favorable plea agreement, she would have gone to trial. It is often reasonable for a non-citizen facing nearly automatic removal to turn down a plea and go to trial risking a longer prison term, rather than to plead guilty to an offense rendering her removal virtually certain. *See Padilla*, 559 U.S. at 368 ("[P]reserving the client's right to remain in the United States may be more important to the client than any potential jail sentence." (quoting *INS v. St. Cyr*, 533 U.S. 289, 322 (2001) (alteration omitted))). We have found prejudice where a non-citizen demonstrates clearly that she placed a "particular emphasis" on the immigration consequence of a plea in deciding whether or not to accept it. *United States v. Kwan*, 407 F.3d 1005, 1017–18 (9th Cir. 2005), *abrogated on other grounds by Padilla*, 559 U.S. 356.

Here, as noted, Rodriguez-Vega made a concerted effort to avoid separation from her family, all of whom reside in the United States, by rejecting an initial plea agreement containing a stipulated removal provision. *See id.* at 1017 ("Kwan has also gone to great lengths to avoid deportation and separation from his wife and children, who are all United States citizens."); *see also United States v. Akinsade*, 686 F.3d 248, 255 (4th Cir. 2012) ("We have . . . found prejudice where the defendant, whose counsel misinformed him of deportation consequences, had significant familial ties to the United States and thus would reasonably risk going to trial instead of pleading guilty and facing certain deportation."). She also demonstrated that she placed great emphasis on remaining in the United States by having

numerous conversations with her counsel regarding the immigration consequences of her plea. *See Kwan*, 407 F.3d at 1017 (alteration in original) ("That Kwan asked counsel about the immigration consequences of pleading guilty before agreeing to do so demonstrates clearly 'that he placed particular emphasis on [immigration consequences] in deciding whether or not to plead guilty.'" (quoting *Hill*, 474 U.S. at 60)).

Rodriguez-Vega was just twenty-two years old at the time she entered into the plea agreement. Had she gone to trial on the initial felony charge, she faced a prison term likely spanning just 10–16 months.[8] A young lawful permanent resident may rationally risk a far greater sentence for an opportunity to avoid lifetime separation from her family and the country in which they reside. *See United States v. Orocio*, 645 F.3d 630, 645 (3d. Cir. 2011), *abrogated on other grounds by Chaidez v. United States*, 133 S.Ct. 1103 (2013) ("Mr. Orocio was only 27 years old at the time he entered the plea agreement, and he rationally could have been more concerned about a near-certainty of multiple decades of banishment from the United States than the possibility of a single decade in prison."). Taken together, these facts demonstrate that Rodriguez-Vega placed a particular emphasis on preserving her ability to remain in the United States, and that had she known that her removal was virtually certain she would have acted rationally in rejecting the

---

[8] Because she had no apparent prior criminal history, had she been convicted at trial of the initial charge of felony Attempted Transportation of Illegal Aliens, Rodriguez-Vega's base offense level likely would have been 12, and she would have been in Criminal History Category I, yielding a Guideline range of 10–16 months. *See* U.S.S.G. § 2L1.1; *id.* Chap. 5, Part A.

second plea agreement and going to trial. Accordingly, she has demonstrated prejudice on this ground as well. *See Kwan*, 407 F.3d at 1017–18.

## 3.

The government relies on inapposite cases outside of the immigration context in which we have held that defendants were not prejudiced where they were advised, either by the plea agreement or the court, that there existed a possibility of a harsher sentence than they anticipated receiving. *See Womack v. Del Papa*, 497 F.3d 998, 1003 (9th Cir. 2007); *United States v. Turner*, 881 F.2d 684, 687 (9th Cir. 1989); *United States v. Thornton*, 23 F.3d 1532, 1533–34 (9th Cir. 1994). Unlike in criminal cases, in which it is the courts that retain discretion over criminal sentencing, courts have no discretion over the immigration consequences of a conviction for a removable crime. *Padilla*, 559 U.S. at 363–64. Here, the court's advisement and the statements in the plea agreement that Rodriguez-Vega faced the possibility of removal did not purge prejudice, if for no other reason than that they did not give her adequate notice regarding the actual consequences of her plea. The plea agreement and plea colloquy, like the advice of her lawyer, each notified Rodriguez-Vega only that there existed a possibility of removal, when in fact her removal was virtually certain. The plea agreement stated that "Defendant recognizes that pleading guilty *may* have consequences with respect to her immigration status." (Emphasis added.) While warning of a dire consequence, the plea agreement characterizes its *likelihood* only as something that "may" happen. Warning of the possibility of a dire consequence is no substitute for warning of its virtual certainty. As Judge Robert L. Hinkle explained, "Well, I know every time that I get on an airplane

that it could crash, but if you tell me it's going to crash, I'm not getting on." *United States v. Choi*, Case No. 4:08-CV-00386-RH, Transcript, Docket No. 96, at 52 (D. Fla. Sept. 30, 2008).**⁹**

Counsel's statement at Rodriguez-Vega's sentencing hearing that "there is a high likelihood that she'll still be deported. It's still *probably* considered an aggravated felony for purposes of immigration law" (emphasis added), is similarly deficient because it likewise fails to state accurately the plain and clear status of the law, *see Padilla*, 559 U.S. at 368–69; *Bonilla*, 637 F.3d at 984, and thus understates the likelihood that his client would be removed. Moreover, even had counsel accurately stated that Rodriguez-Vega's removal was virtually certain, we would still find his statement inadequate to purge prejudice because it came too late. Prior to pleading guilty, Rodriguez-Vega could have simply rejected the plea and gone to trial, or directed counsel to attempt to negotiate a plea not requiring her removal. By the time counsel made his statement at the sentencing hearing, however, she could not do either unless she first obtained the court's permission to withdraw her plea. *See Orocio*, 645 F.3d at 646 (court's advice at sentencing came "far too late in the process . . . to effectively alert Mr. Orocio to the

---

**⁹** Even though the plea agreement also stated that "Defendant nevertheless affirms that she wants to plead guilty regardless of any immigration consequences that his [sic] plea may entail, even if the consequence is his [sic] automatic removal," this statement also did not cure prejudice. We give little weight to such a hypothetical provision, which lacked any reference to the specifics of Rodriguez-Vega's case. Moreover, the effectiveness of this written warning was substantially diminished by the context in which it was given, i.e. the oral statements by Rodriguez-Vega's counsel and the court that she faced only a possibility of removal.

severe removal consequences of his guilty plea of five months before"). Moreover, as stated above, by the time of her sentencing hearing plea bargaining had ended and with it Rodriguez-Vega's ability to derive benefit from her counsel's advice during the most critical period. *Missouri*, 132 S.Ct. at 1407–08; *see also Padilla*, 559 U.S. at 373; *Vartelas*, 132 S.Ct. at 1492 n. 10; *Hernandez-Cruz*, 651 F.3d at 1110–11.

## C.

Petitioner contends that the district court erred in failing to conduct an evidentiary hearing and asks that we remand for further proceedings.[10] However, the district court ordered an expansion of the record by directing the government to file a declaration from Rodriguez-Vega's former counsel as to all communications between himself and his former client regarding deportation consequences. The declaration was filed along with the declaration regarding communications as to deportation consequences previously filed by Rodriguez-Vega. These declarations, along with the other material before the district court, were adequate to allow it to resolve the question presented by the § 2255 petition. An oral hearing is not necessary in all cases. Frequently, as here, an expansion of the record accompanied by supplemental briefs will suffice for that purpose. *See Blackledge v. Allison*, 431 U.S. 63, 80–83 (1977) (holding that the district court erred in summarily dismissing petitioner's habeas petition and stating that, on remand, the district court may either hold an evidentiary hearing or utilize other measures, such as ordering expansion of the record, which may render a hearing

---

[10] Although this request is moot in view of our ruling for Petitioner on the merits, we believe it worth explaining that the district court did not commit the procedural error that Petitioner charges it with.

unnecessary); *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001) (courts may use methods under § 2255 to expand the record without conducting a full-blown testimonial hearing); *United States v. Pollard*, 959 F.2d 1011, 1031 (D.C. Cir. 1992) ("Only where the § 2255 motion raises 'detailed and specific' factual allegations whose resolution requires information outside of the record or the judge's 'personal knowledge or recollection' must a hearing be held.").[11] Even in the non-habeas context, courts frequently decide motions on the paper record without holding oral hearings. *See* FED.R.CIV.PROC.43(c) ("When a motion relies on facts outside the record, the court may hear the matter on affidavits or may hear it wholly or partly on oral testimony or on depositions.").

The district court did not abuse its discretion in failing to conduct a full evidentiary hearing in this case. The expanded record provides an adequate basis on which to resolve both the ineffective performance and the prejudice inquiries.[12] The district court resolved both issues, and the parties fully briefed both on this appeal. Accordingly, it is appropriate for us to decide those issues here. *See Kovacs*, 744 F.3d at 54 (reversing district court's dismissal of a *coram nobis* petition

---

[11] Of course, a district court may not *summarily dismiss* a petition without holding an evidentiary hearing unless the petitioner fails to allege facts which, if true, would entitle him to relief, or the petition, files and record of the case conclusively show that he is entitled to no relief. 28 U.S.C. § 2255; *Howard*, 381 F.3d at 877.

[12] As the government itself points out in its brief on appeal, "The court record itself is voluminous for this misdemeanor case. The record contains 56 items before the magistrate's order. The magistrate judge made a complete and thorough record of this case and the case should not be remanded for further evidentiary hearing.

without holding an evidentiary hearing, and directing that the district court issue the writ). Because, for the reasons set forth above and under the controlling cases, Rodriguez-Vega prevails both on ineffective performance and on prejudice, her conviction cannot stand.

## CONCLUSION

We hold that Rodriguez-Vega received ineffective assistance of counsel. Accordingly, we vacate the conviction and remand to the district court.

**VACATED AND REMANDED.**