Filed 9/27/18

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>PABLO GONZALEZ,<br><br>    Defendant and Appellant. | D073436<br><br><br>(Super. Ct. No. SCS152019) |

APPEAL from an order of the Superior Court of San Diego County, Theodore M. Weathers, Judge.  Affirmed.

Laura G. Schaefer, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Julie L. Garland, Assistant Attorney General, Seth M. Friedman and Adrian R. Contreras, Deputy Attorneys General, for Plaintiff and Respondent.

In August 2000, Pablo Gonzalez pled guilty to possession for sale of marijuana. (Health & Saf. Code, §11359.)  The trial court sentenced Gonzalez to 74 days in custody

and three years' summary probation.  After serving his 74 days in custody, Gonzalez was deported in October 2000.  Gonzalez reentered the United States about a year later.  He subsequently was convicted of possession of a controlled substance for sale (Health & Saf. Code, § 11378), criminal threats (Pen. Code,[1] § 422), and domestic battery (§ 243, subd. (e)).  In June 2002, Gonzalez was deported again.  He reentered the United States, but was deported yet again in April 2017.

On January 1, 2017, section 1473.7 became effective.  That statute allows a person no longer imprisoned or restrained to move to vacate a conviction or sentence for one of two reasons, including that "[t]he conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere." (§ 1473.7, subd. (a)(1).)  In August 2017, Gonzalez moved to vacate his 2000 conviction under section 1473.7.  After an evidentiary hearing, the superior court denied Gonzalez's motion.

Gonzalez appeals, contending the court erred in denying his motion under section 1473.7.  Specifically, he claims he established prejudicial error based on his counsel's failure to adequately advise him of the immigration consequences of his plea and failure to seek an immigration safe alternative disposition.  We conclude Gonzalez's arguments lack merit.  As such, we affirm.

---

[1]      Statutory references are to the Penal Code unless otherwise specified.

2

FACTUAL AND PROCEDURAL BACKGROUND

*Guilty Plea*

In July 2000, Gonzalez was arrested after crossing the border in a vehicle containing 74 pounds of marijuana. He was charged with transportation of marijuana (Health & Saf. Code, § 11360) and possession of marijuana for sale (Health & Saf. Code, § 11359).

Gonzalez ultimately pled guilty to possession of marijuana for sale at a hearing on July 26, 2000 at his arraignment in the high intense drug trafficking area court. At that hearing, two other defendants were present. The court asked the defendants if they could read and understand English. Gonzalez responded in the affirmative. The court then informed the defendants of the potential immigration consequences of a guilty plea: "Each of you should understand if you're not citizens of the United States, your guilty plea will affect your status in this country. And it will result in the departure, denial of citizenship or exclusion."[2]

The court also asked Gonzalez if he read and understood his change of plea form. Gonzalez answered, "Yes." Gonzalez's change of plea form appears in the record. As

---

[2] The parties quibble about the court's use of the word "departure." The People claim the court misspoke or the court reporter transcribed the wrong word. To this end, the People assert the court either meant or actually said "deportation" instead of "departure." Gonzalez counters there is no evidence to support the conclusion that the appearance of the word "departure" in the reporter's transcript is scrivener's error. This disagreement is immaterial to our analysis here.

pertinent here, the form states: "I understand that if I am not a citizen of the United States a plea of Guilty or No Contest can or will result in removal or deportation, exclusion from admission to this country, and denial of naturalization." Gonzalez's initials appear in the box next to that statement.

The form also contained the following statement signed by Gonzalez's attorney:

> "I am the attorney for the defendant in the above-entitled case. I personally read and explained to the defendant the entire contents of this plea form and any addendum thereto. I discussed all charges and possible defenses with the defendant, and the consequences of this plea. I personally observed the defendant fill in and initial each item, or read and initial each item to acknowledge his/her understanding and waivers. I observed the defendant date and sign this form and any addendum. I concur in the defendant's plea and waiver of constitutional rights."

The court subsequently sentenced Gonzalez to custody for 74 days and placed him on probation for three years. After serving his time in custody, Gonzalez was deported on October 6, 2000.

*The Motion to Vacate*

On August 29, 2017, Gonzalez filed a motion to vacate conviction based on section 1473.7. In his motion, Gonzalez argued that (1) his counsel violated the duty to investigate and accurately advise him about the specific immigration consequences of a plea and (2) his counsel failed to defend against immigration consequences of a plea because he did not attempt to plea bargain for an immigration safe alternative disposition.

4

Among other material submitted in support of his motion, Gonzalez submitted a self-declaration. In that declaration, Gonzalez stated that he believed he would have the opportunity to challenge his deportation even if he pled guilty. He also declared that, at the time he pled guilty, his "English was not very good[,]" which lead to "confusion/misunderstanding." Gonzalez did not remember talking to a lawyer or speaking to anyone in Spanish. He also claimed that he does not recall if anyone told him that he would be deported if he pled guilty. Gonzalez represented that had he been told of the deportation consequences of pleading guilty, he would have "fought" his case and let his "lawyer try for a better deal or to win the case."

The People opposed Gonzalez's motion, contending Gonzalez could not prove by a preponderance of the evidence that there was a prejudicial error damaging his ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a guilty plea.

At the hearing on Gonzalez's motion, Gonzalez's counsel offered the testimony of two witnesses: Jose Luis Guerrero and Leticia Gonzalez (Leticia).

Guerrero, who was a deputy public defender at the time, represented Gonzalez when he pled guilty. Guerrero had no independent recollection of Gonzalez's case. However, after reviewing his office's case management system, he acknowledged that it appeared he had been assigned Gonzalez's case in 2000. Guerrero stated that, in 2000, a criminal defense attorney would provide a defendant with a standard immigration advisal,

5

but would not consider the immigration consequences of a particular crime. Guerrero testified that he would have provided Gonzalez with immigration advice like what was outlined on the change of plea form at that time. Guerrero explained that a defense counsel's approach to advising a criminal defendant of immigration consequences changed in 2010 after the United States Supreme Court issued its decision in *Padilla v. Kentucky* (2010) 559 U.S. 356 (*Padilla*). After that case, the Office of the Public Defender began training its attorneys regarding the immigration consequences relating to the charged crimes.

For example, after *Padilla, supra,* 559 U.S. 356, the Office of the Public Defender would instruct its attorneys that a defendant who has a permanent record should plead not guilty at the initial arraignment so the attorney can investigate the immigration consequences and then try to obtain a more favorable disposition (relating to immigration if applicable). Additionally, Guerrero confirmed that in 2000, the Office of the Public Defender had no specific policy with respect to how immigration consequences should be investigated or handled. At that time, the custom was for an attorney to advise a defendant consistent with the language on the change of plea form. Guerrero explained it was his practice to review the change of plea form with a defendant and make sure the defendant understood each section before initialing and signing the form.

Also, Guerrero testified that he had no reason to believe that Gonzalez was told anything regarding the immigration consequences of pleading guilty beyond what was

contained in the change of plea form. Guerrero noted that Gonzalez's pretrial services form indicated that an immigration hold existed. Guerrero explained that the immigration hold would have alerted him to the fact that Gonzalez was not a citizen, and thus, he would have advised Gonzalez about the immigration consequences as set forth in the change of plea form. Guerrero stated that he would tell a group of defendants that an immigration hold indicates that a defendant could be deported if he or she pled guilty. Then, on an individual basis, Guerrero would have informed Gonzalez that he would be deported if he pled guilty.

Guerrero stated that he did not believe Gonzalez had much of a defense because he confessed. As such, Guerrero considered the offer from the prosecutor was the best one Gonzalez would receive.

Leticia, Gonzalez's wife, also testified at the hearing on Gonzalez's motion to vacate. Gonzalez explained that at the time of Gonzalez's arrest, they had twins, who were suffering from a variety of ailments and needed frequent medical attention. The income Gonzalez was earning at the time was essential to the well-being of his family because Leticia was not working.

Leticia stated that she attempted multiple times since Gonzalez was arrested to secure legal assistance to help with immigration issues. However, no attorney would help. To the extent an attorney responded to Leticia's request for representation, the attorney would inform Leticia there was nothing to be done for Gonzalez. Only after

7

Gonzalez was deported in April 2017 did an attorney tell Leticia there was a chance she could fight Gonzalez's deportation.

Leticia testified that she would have supported a longer custody period in 2000 if it allowed Gonzalez an opportunity to stay in the United States legally.

Leticia admitted that, in 2002, Gonzalez was convicted of possession of methamphetamine for sale, criminal threats, and domestic violence. He then was deported shortly after his conviction.[3]

The parties stipulated that, if called to testify, Gonzalez would state that he would not have pled guilty in this case had he known he was pleading to an aggravated felony guaranteeing his deportation to Mexico with no avenue for relief.

After hearing the witnesses' respective testimony, the court permitted counsel to argue the matter. In addition to emphasizing Gonzalez's family situation, Gonzalez's counsel stated that Gonzalez did not appreciate or understand the consequences of pleading guilty. He pointed out that Gonzalez was told he would be deported, but he was not informed that he would be permanently barred from reentering the United States and would never be able to become a citizen. Counsel argued that it was reasonably probable that, if Gonzalez understood the immigration consequences of pleading guilty, he would not have done so. Gonzalez's counsel also maintained that in representing Gonzalez,

---

[3] Gonzalez was deported on or about June 26, 2002.

8

Guerrero had the obligation to try to secure a better immigration consequence for Gonzalez.

The prosecutor argued that Gonzalez was properly informed of the immigration consequences of his guilty plea. She also asserted that Gonzalez had not satisfied the evidentiary requirements under section 1473.7.

The court denied the motion. In doing so, the court stated that it found Guerrero's testimony "more than credible." The court determined that Guerrero informed Gonzalez on at least two occasions, once in a group setting and another individually, that he would be deported. The court also noted that the change of plea form expressed that a plea of guilty would " 'result in removal, deportation or exclusion from admission to this country, and a denial of naturalization.' " The court found Gonzalez understood that if he pled guilty, then he would be deported. In addition, the court determined that count 2, which the prosecution dismissed under the plea agreement, carried a four-year sentence and was a factor defense counsel would have considered in negotiating a plea agreement.

## DISCUSSION

Section 1473.7, subdivision (c) provides: "A person no longer imprisoned or restrained may prosecute a motion to vacate a conviction or sentence" for one of two reasons, including that "[t]he conviction or sentence is legally invalid due to a prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of

9

guilty or nolo contendere." (§ 1473.7, subd. (a)(1).) The motion must be made with "reasonable diligence" after the party receives notice of pending immigration proceedings or a removal order. (§ 1473.7, subd. (b).) The court must hold a hearing on the motion, and if the moving party establishes by a preponderance of the evidence that he or she is entitled to relief, the court must allow the person to withdraw his or her plea. (§ 1473.7, subd. (e).)4

---

4    In full, section 1473.7, states: "(a) A person no longer imprisoned or restrained may prosecute a motion to vacate a conviction or sentence for either of the following reasons: [¶] (1) The conviction or sentence is legally invalid due to a prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere. [¶] (2) Newly discovered evidence of actual innocence exists that requires vacation of the conviction or sentence as a matter of law or in the interests of justice. [¶] (b) A motion pursuant to paragraph (1) of subdivision (a) shall be filed with reasonable diligence after the later of the following: [¶] (1) The date the moving party receives a notice to appear in immigration court or other notice from immigration authorities that asserts the conviction or sentence as a basis for removal. [¶] (2) The date a removal order against the moving party, based on the existence of the conviction or sentence, becomes final. [¶] (c) A motion pursuant to paragraph (2) of subdivision (a) shall be filed without undue delay from the date the moving party discovered, or could have discovered with the exercise of due diligence, the evidence that provides a basis for relief under this section. [¶] (d) All motions shall be entitled to a hearing. At the request of the moving party, the court may hold the hearing without the personal presence of the moving party if counsel for the moving party is present and the court finds good cause as to why the moving party cannot be present. [¶] (e) When ruling on the motion: [¶] (1) The court shall grant the motion to vacate the conviction or sentence if the moving party establishes, by a preponderance of the evidence, the existence of any of the grounds for relief specified in subdivision (a). [¶] (2) In granting or denying the motion, the court shall specify the basis for its conclusion. [¶] (3) If the court grants the motion to vacate a conviction or sentence obtained through a plea of guilty or nolo contendere, the court shall allow the moving party to withdraw the plea. [¶] (f) An order granting or denying the motion is appealable under subdivision (b) of Section 1237 as an order after judgment affecting the substantial rights of a party."

Here, Gonzalez appeals the denial of his section 1473.7 motion. As a threshold matter, the parties disagree regarding the applicable standard of review. Gonzalez urges us to follow *People v. Ogunmowo* (2018) 23 Cal.App.5th 67 (*Ogunmowo*) and apply a de novo review, including making independent findings of fact. The People contend *Ogunmowo* was wrongly decided and assert an abuse of discretion is the proper standard.

In *Ogunmowo*, the court held "[d]e novo review is the appropriate standard for a mixed question of fact and law that implicates a defendant's constitutional right." (*Ogunmowo*, *supra*, 23 Cal.App.5th at p. 76.) Such a pronouncement is not controversial. (See *People v. Cromer* (2001) 24 Cal.4th 889, 894 [courts use independent, de novo review for mixed questions of fact and law that implicate constitutional rights].) However, the court in *Ogunmowo* implicitly suggested that an appellate court, on direct appeal, can make independent findings of fact, especially when the trial court makes factual findings based on declarations. (*Ogunmowo*, *supra*, at p. 79 [concluding the trial court's factual determination was not entitled to deference because it was based on statements made in declarations]; *ibid.* ["The trial court and this court are in the same position in interpreting written declarations."].) The court based this conclusion on *In re Resendiz* (2001) 25 Cal.4th 230 (*Resendiz*). Yet, that case did not involve a direct appeal, but was an original proceeding (petition for writ of habeas corpus). Our high court noted that where the superior court denied habeas corpus relief after an evidentiary hearing and a new habeas petition was filed with the Court of Appeal, the appellate court is not bound

11

by the factual determinations made below, but independently evaluates the evidence and makes its own factual determinations. (*Id*. at p. 249.) Nevertheless, even in the context of a habeas petition, the court observed that factual determinations made below " 'are entitled to great weight . . . when supported by the record, particularly with respect to questions of or depending upon the credibility of witnesses the [superior court] heard and observed.' " (*Ibid.*)

Here, we are not faced with a petition for writ of habeas corpus. Thus, we do not find *Resendiz, supra,* 25 Cal.4th 230 helpful in establishing the appropriate standard of review. Further, to the extent that the court in *Ogunmowo*, *supra*, 23 Cal.App.5th 67 relied on *Resendiz* to conclude that it could make independent factual findings on a direct appeal, we do not find the court's reasoning persuasive. And Gonzalez does not cite to any other case where a court determined that an appellate court should make independent factual findings when addressing an appeal from an order denying a change of plea.

A decision to deny a motion to withdraw a guilty plea rests in the sound discretion of the court. (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1254.) However, we are mindful that such a motion based on a claim of ineffective assistance of counsel implicates a constitutional right. This is not unique to motions to withdraw guilty pleas. For example, an appellate court reviews a trial court's denial of a motion for new trial for an abuse of discretion. (*People v. Mehserle* (2012) 206 Cal.App.4th 1125, 1151.) Yet, in cases in which a trial court denies a motion for new trial raising ineffective assistance of

12

counsel claims, we uphold the trial court's factual findings if they are supported by substantial evidence and we exercise our independent judgment on the legal issues. (See, e.g., *People v. Taylor* (1984) 162 Cal.App.3d 720, 724-725.) These "differing" standards of review are easily reconciled. A trial court may be found to have abused its discretion on the issue of ineffective assistance of counsel if its factual findings are not supported by substantial evidence or if it misinterprets or misapplies the applicable legal standard. This is the standard we shall apply here.

A defendant who seeks to vacate a conviction on a claim of ineffective assistance of counsel must establish two things: (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness and (2) he or she was prejudiced by that deficient performance. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688 (*Strickland*).) Section 1473.7, under which this action was brought, seemingly codifies this requirement by placing the burden on the defendant to establish cause for relief by a preponderance of the evidence. (§ 1473.7, subd. (e).) Although existing case law does not use the phrase "preponderance of the evidence" in its formulation of the test for ineffective assistance of counsel, section 1473.7's requirements essentially track the showings that were required prior to the enactment of section 1473.7. (See *In re Cordero* (1988) 46 Cal.3d 161, 180.)

Here, Gonzalez maintains if Guerrero advised him consistent with the change of plea form, Guerrero's advice would have been "constitutionally deficient." To this point,

13

he relies on a pair of federal cases: *Padilla*, *supra*, 559 U.S. 356 and *United States v.*

*Rodriguez-Vega* (9th Cir. 2015) 797 F.3d 781 (*Rodriguez-Vega*). Neither case supports

Gonzalez's position here.

In *Padilla*, *supra*, 559 U.S. 356, the United States Supreme Court addressed what

constitutes deficient performance under the *Strickland* test with respect to advising a

defendant on the deportation consequences of pleading guilty. In that case, the

defendant, a lawful permanent resident, pled guilty to drug charges involving the

transportation of a large amount of marijuana in his tractor trailer. The court noted the

defendant's "crime, like virtually every drug offense except for only the most

insignificant marijuana offenses, is a deportable offense under 8 U.S.C.

§ 1227(a)(2)(B)(i)." (*Padilla*, *supra*, at p. 359, fn. 1.) However, before he pled guilty,

the defendant's counsel did not advise him of the immigration consequences of his plea,

and in fact, told him he " ' "did not have to worry about immigration status because he

had been in the country so long." ' " (*Id.* at p. 359.) The court explained:

> "In the instant case, the terms of the relevant immigration statute are
> succinct, clear, and explicit in defining the removal consequence for
> Padilla's conviction. [Citation.] . . . Padilla's counsel could have
> easily determined that his plea would make him eligible for
> deportation simply from reading the text of the statute, which
> addresses not some broad classification of crimes but specifically
> commands removal for all controlled substances convictions except
> for the most trivial of marijuana possession offenses. Instead,
> Padilla's counsel provided him false assurance that his conviction
> would not result in his removal from this country. This is not a hard
> case in which to find deficiency: The consequences of Padilla's plea
> could easily be determined from reading the removal statute, his

14

deportation was presumptively mandatory, and his counsel's advice was incorrect." (*Id*. at pp. 368-369.)

The court determined that to provide effective assistance of counsel, "counsel must inform her client whether his plea carries a risk of deportation." (*Padilla, supra,* 559 U.S. at p. 374.)

In *Rodriguez-Vega*, *supra*, 797 F.3d 781, the Ninth Circuit, following *Padilla*, concluded where a defendant's conviction of a removable offense renders deportation "practically inevitable," counsel is required to advise his or her client that the "conviction rendered [his or her] removal virtually certain, or words to that effect," advising of a possibility is not sufficient. (*Id.* at pp. 786-787, 790.) In other words, "where the law is 'succinct, clear, and explicit' that the conviction renders removal virtually certain, counsel must advise his client that removal is a virtual certainty." (*Id.* at p. 786, quoting *Padilla*, *supra*, 559 U.S. at pp. 368-369.)

The instant matter is not analogous to *Padilla, supra,* 559 U.S. 356 or *Rodriguez-Vega, supra,* 797 F.3d 781. Unlike *Padilla*, Guerrero did not advise Gonzalez that he did not have to worry about the immigration consequences of pleading guilty. Nor did Guerrero run afoul of *Rodriquez-Vega*. Below, the superior court found that Guerrero told Gonzalez twice that he would be deported if he pled guilty. Substantial evidence supports this finding.

In addition to finding *Padilla*, *supra*, 559 U.S. 356 and *Rodriguez-Vega*, *supra*, 797 F.3d 781 factually distinguishable from the instant matter, we also conclude they are

15

not instructive here because Gonzalez pled guilty almost 10 years before the opinion in *Padilla* was issued. Before *Padilla*, the immigration ramifications of guilty or no contest pleas were generally considered indirect or " 'collateral' " consequences of those pleas, about which a defendant need not be advised. (*People v. Superior Court* (*Zamudio*) (2000) 23 Cal.4th 183, 198; *People v. Limones* (1991) 233 Cal.App.3d 338, 344.) Therefore, failure to advise a defendant about those ramifications could not support a claim of ineffective assistance of counsel under the first prong of the *Strickland* analysis because such a failure did not fall below a general standard of reasonableness.

*Padilla, supra,* 559 U.S. 356 changed this as explained in *Chaidez v. United States* (2013) 568 U.S. 342 (*Chaidez*). In that case, the United States Supreme Court explained that *Padilla* had had the effect of suddenly changing the nature of immigration issues from being "collateral consequences" of pleas to something unique, roughly akin to direct consequences. (*Chaidez*, *supra,* at p. 349.) The United States Supreme Court concluded that *Padilla* had created a new affirmative obligation on trial counsel to understand and accurately explain the immigration consequences of a plea to a defendant before the entry of that plea where no such duty had existed before. This rule was not based on prevailing professional standards but, rather, on a determination that immigration consequences were potentially so profound that trial counsel had an obligation to accurately advise their clients about them. (*Chaidez*, *supra*, at p. 353.) Therefore, the court in *Chaidez* held that, under the rules set out in *Teague v. Lane* (1989) 489 U.S. 288, the *Padilla* opinion

16

could not be applied retroactively to cases that were final at the time the opinion in *Padilla* was issued.  (*Chaidez*, *supra*, at pp. 344, 358.)

As such, Guerrero had no affirmative obligation, under *Padilla, supra,* 559 U.S. 356, to advise Gonzalez of the immigration consequences of his plea at the time that plea was taken.  That said, Guerrero did advise Gonzalez that he would be deported if he pled guilty.  However, Gonzalez insists that was insufficient because:  (1) Guerrero had the obligation to advise Gonzalez that a guilty plea also would result in his exclusion from the United States and the denial of naturalization; and (2) Guerrero had the obligation to negotiate a more immigration favorable plea.  Gonzalez nevertheless does not provide any authority that required Guerrero, in August 2000, to provide this type of advice or negotiate this kind of plea.  As such, Guerrero's representation of Gonzalez did not fall below the then-contemporary reasonable objective standard of practice.  Thus, Gonzalez has failed to satisfy the first prong of the *Strickland* test and his claim of ineffective assistance of counsel must fail.

Perhaps in recognition that *Padilla, supra,* 559 U.S. 356 does not apply retroactively to his case, Gonzalez also argues that California imposed an independent pre-*Padilla* duty on trial counsel to inform their clients of the immigration consequences of their pleas.  This argument is unavailing.

Gonzalez's reliance on recently enacted sections 1016.2 and 1016.3, which were intended to codify both the *Padilla* requirements and any existing California decisional

17

law, is misplaced.  These provisions cannot apply to the instant matter for two reasons.

First, these statutes, which were added in 2015 by Assembly Bill No. 1343 (2015-2016

Reg. Sess.), were, by their terms, enacted to codify the *Padilla* ruling (§ 1016.2,

subd. (h)).  This would include the restriction on retroactivity, which occurred in 2013 in

*Chaidez, supra,* 568 U.S.342, under the familiar rule that the Legislature is presumed to

be aware of decisional law and to have enacted statutes considering that decisional law.

(*People v. Giordano* (2007) 42 Cal.4th 644, 659.)

Second, section 3 creates a strong presumption that changes to the Penal Code are

to be applied prospectively only, unless it is " 'very clear' " from either the language of

the statute or extrinsic sources that the Legislature intended retroactive application.

(*People v. Brown* (2012) 54 Cal.4th 314, 324.)  Sections 1016.2 and 1016.3 contain no

such statement of legislative intent and, given section 1016.2's repeated references to the

*Padilla* decision (559 U.S. 356), it is clear that the Legislature did not intend that sections

1016.2 and 1016.3 apply retroactively.  Moreover, we find it telling that, although

Gonzalez cites to sections 1016.2 and 1016.3 as support for his position here, he offers no

argument that those statutes should be applied retroactively.

Similarly, we conclude Gonzalez's reliance on *People v. Soriano* (1987) 194

Cal.App.3d 1470, *People v. Barocio* (1989) 216 Cal.App.3d 99 (*Barocio*), and *People v.*

*Bautista* (2004) 115 Cal.App.4th 229 (*Bautista*) is misplaced.  In *Soriano*, the defendant

claimed that he asked his attorney if he would be deported if he pled guilty.  The attorney

responded in the negative. Subsequently, the defendant asked his attorney whether a guilty plea would prohibit him from obtaining citizenship. The attorney responded that it would not and reiterated that he would not be deported. (*Soriano*, *supra*, at p. 1478.) The defendant's attorney asserted that she told her client that he " 'could' " be deported if he pled guilty. (*Id.* at p. 1479.) The court concluded the attorney's advice was erroneous and counsel had undertaken no effort to obtain accurate information, despite being asked about the immigration consequences of a guilty plea. (*Id.* at p. 1482.) The court determined that this erroneous advice constituted ineffective assistance of counsel because, when asked, trial counsel had an obligation to research further and provide accurate information. (*Ibid*.) However, *Soriano* did not establish that defense counsel had a duty to research and advise the defendant of his immigration consequences. Instead, it stands for the proposition that when asked by a client about the immigration consequences of a plea, the attorney has an obligation to obtain correct information and advise the client based on that information. Here, there is no indication in the record that Gonzalez asked his counsel repeatedly, let alone once, about the immigration consequences of a guilty plea.

*Barocio*, *supra*, 216 Cal.App.3d 99, similarly did not create an independent pre-*Padilla* duty to advise defendants of immigration consequences of their pleas. In that case, the defendant's trial attorney failed to seek a judicial recommendation against deportation. (*Barocio*, *supra*, at p. 103.) There was no issue about counsel's advice to

19

the defendant. Indeed, the court in *Barocio* specifically concluded that while section 1016.5 imposed a duty on the court to warn of the possible immigration consequences of a plea, counsel had no corresponding duty because immigration concerns were "collateral consequence[s]" of the plea. (*Barocio*, *supra*, at pp. 107-108.) The only deficiency found in *Barocio* was trial counsel's failure to advise the defendant of the right to a recommendation against deportation. (*Id*. at pp. 109-110.) The case was remanded to the trial court for resentencing to allow counsel to confer with his client regarding requesting a judicial recommendation against deportation and carry out the client's wishes. (*Id*. at p. 111.) Gonzalez makes no similar complaint here.

Finally, we conclude that *Bautista*, *supra*, 115 Cal.App.4th 229 is not helpful to Gonzalez. The evidence in *Bautista* showed that the defense attorney's strategy was simply to bargain for "the most lenient sentence possible." (*Id.* at p. 238.) However, an immigration attorney provided a declaration as an expert witness that in at least five cases in which he was personally involved, the prosecutor agreed to allow a defendant charged with drug sales to " 'plead upward,' " defined as pursuing a negotiated plea for a violation of a greater offense that would carry a longer prison sentence but not result in deportation. (*Ibid.*) The defense attorney never contemplated such a strategy. (*Ibid*.) And the expert witnesses opined that the defense attorney's representation of the defendant fell below objective standards of reasonableness. (*Id.* at pp. 239-240.) The appellate court issued an order to show cause to the trial court for a reference hearing to

take evidence and resolve factual issues relating to defense counsel's legal advice at the time of the defendant's guilty plea. (*Id.* at p. 242.) In contrast, Gonzalez has presented no evidence that a more immigration favorable disposition was available in his case. Nor did he offer an expert opinion that Guerrero's representation of him fell below an objective standard of reasonableness at the time Gonzalez pled guilty. Moreover, there is no suggestion in *Bautista* that trial counsel had a pre-*Padilla* duty to research and explain immigration consequences to their clients.

In summary, this case highlights the difficulties of a motion under section 1473.7 challenging a guilty plea that was made almost 20 years earlier. Gonzalez's declaration contains little helpful information as he does not recall what advice he received. He does not claim that he asked his attorney about the immigration consequences of his plea. He does not assert that his attorney provided him incorrect advice about the immigration consequences of his plea. Gonzalez does not offer any evidence that a more immigration favorable plea was available to him in August 2000. There is no indication that Gonzalez asked his attorney to obtain such a plea. Although Gonzalez's attorney, Guerrero, does not have any independent recollection regarding representing Gonzalez, Guerrero testified to what his practices were in August 2000 and what he was likely to have done. According to Guerrero, he would have advised Gonzalez at least twice that he would be deported if he pled guilty. The superior court found Guerrero very credible. Gonzalez offers no evidence to contradict Guerrero's testimony. On the record before us, Gonzalez

21

has not carried his burden of establishing the first prong of the *Strickland* test, and thus, he has not shown by a preponderance of the evidence that he is entitled to relief under section 1473.7.  (§ 1473.7, subd. (e).)

DISPOSITION

The order is affirmed.


HUFFMAN, J.

WE CONCUR:


BENKE, Acting P. J.


O'ROURKE, J.

22