Filed 9/8/23  In re Hernandez  CA5
Opinion following transfer from Supreme Court

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re ANGELA HERNANDEZ<br><br>On Habeas Corpus. | F076752<br><br>(Super. Ct. Nos. HC15330A &<br>BF150639A) |

APPEAL from a judgment of the Superior Court of Kern County.  Steven M. Katz, Judge.

Law Office of Jacob M. Weisberg and Jacob M. Weisberg for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Gerald A. Engler and Lance E. Winters, Chief Assistant Attorneys General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Jeffrey A. White, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

**SEE DISSENTING OPINION**

Angela Hernandez (appellant) appealed from the denial of her application to vacate a conviction due to inadequate advice about immigration consequences. In 2020, we originally affirmed the trial court's order. Appellant filed a petition for review. The California Supreme Court granted the petition and remanded the case to us with directions to vacate our decision and reconsider the cause in light of *People v. Vivar* (2021) 11 Cal.5th 510 (*Vivar*). We again affirmed the order. Appellant filed another petition for review. The high court granted the second petition and remanded the case to us with directions to vacate our decision and reconsider the cause in light of *People v. Espinoza* (2023) 14 Cal.5th 311 (*Espinoza*).

Appellant filed two requests for judicial notice of certain court documents, including one for judicial notice of a February 24, 2023 "**NOTICE OF INTENT TO TAKE CASE OFF OF THE COURT'S CALENDAR**" from the San Francisco Immigration Court. The Attorney General does not oppose these requests and the matters to be judicially noticed are not reasonably open to dispute. We grant appellant's requests. (See *People v. Hardy* (1992) 2 Cal.4th 86, 134-135.)

We have reconsidered the cause in light of *Espinoza*, and – once again − affirm the order.[1]

---

[1] As will be described, *post*, appellant sought relief in the trial court by means of a petition for writ of habeas corpus. In a noncapital case, a habeas petitioner cannot appeal from an order denying relief, but rather must file a new petition in a higher court. (Pen. Code, § 1506; *In re Reed* (1983) 33 Cal.3d 914, 918, fn. 2, overruled on another ground in *In re Alva* (2004) 33 Cal.4th 254, 264; *In re Hochberg* (1970) 2 Cal.3d 870, 875, disapproved on another ground in *In re Fields* (1990) 51 Cal.3d 1063, 1070, fn. 3; cf. Pen. Code, § 1509.1; *Briggs v. Brown* (2017) 3 Cal.5th 808, 825.) Appellant did not do so, but instead filed a notice of appeal in a timely manner following the trial court's ruling.

When apparently informed by a clerk of the Kern County Superior Court that the notice of appeal was improper since the trial court denied the petition for writ of habeas corpus, counsel for appellant (who also represents her on appeal) explained that the case essentially converted from a habeas action to a motion to vacate appellant's conviction pursuant to Penal Code section 1473.7, and that the notice of appeal was filed with

## FACTS AND PROCEDURAL HISTORY

On September 9, 2013, appellant was charged by complaint with sale or transportation of marijuana (Health & Saf. Code, § 11360, subd. (a); count 1) and possession of marijuana for sale (*id*., § 11359; count 2). According to the probation officer's report, which in turn summarized law enforcement reports, a confidential informant told Kern County Sheriff's deputies that appellant wanted to sell to the informant 105 pounds of marijuana at $900 per pound, and that they had agreed to meet at a store in Delano on August 16, 2013. On that date, law enforcement officers were at the location and, when appellant arrived, they took her into custody. A search of the vehicle in which appellant was the sole occupant revealed five black trash bags containing approximately 105 pounds of processed marijuana. Appellant admitted having approximately 100 pounds of marijuana in the vehicle, and said she would be making $2,000 for it. She said she would be receiving the money for delivering the

---

respect to the trial court's denial of the motion to vacate pursuant to that statute. (Further statutory references are to the Penal Code unless otherwise stated.) An order granting or denying relief under section 1473.7 is appealable, pursuant to section 1237, subdivision (b), as an order after judgment affecting a party's substantial rights. (§ 1473.7, subd. (f).) An appellant is not required to obtain a certificate of probable cause as a prerequisite to the appeal. (See *People v. Arriaga* (2014) 58 Cal.4th 950, 960.)

Appellant was on probation at the time she first filed her habeas petition. At that time, habeas was the proper means by which to raise her claims. (See § 1473; *In re Hernandez* (2019) 33 Cal.App.5th 530, 542.) Since appellant was still considered to be legally under restraint, section 1473.7 was not applicable to her. (*People v. Cruz-Lopez* (2018) 27 Cal.App.5th 212, 221.) By the time the trial court incorporated section 1473.7 into the habeas proceedings, however, appellant was apparently no longer on probation. This, in turn, seems to have led to a confused and confusing merger of the writ and statutory proceedings, although it did not deprive the trial court of jurisdiction over the habeas proceedings. (*In re Hernandez*, *supra*, at p. 542.)

Whether cast as being raised in a new habeas proceeding in this court or after denial of a statutory motion to vacate, appellant's claims are reviewable by us on the merits. The Attorney General does not contend otherwise, nor does he challenge the manner in which appellant presents those claims. Accordingly, we allowed the appeal to proceed as such while maintaining the habeas captioning of our opinion.

marijuana, not for selling it. She said the man who told her to deliver it placed the marijuana in her vehicle in a grape vineyard. She admitted being present when the marijuana was loaded into her vehicle, but denied it belonged to her. She said she had her own marijuana—approximately 49 plants and about a pound of processed marijuana—at her residence, and that she had a marijuana recommendation card.

On October 31, 2013, pursuant to section 859a, appellant pled guilty or nolo contendere to both counts of the complaint on the condition that she serve 180 days in custody.[2] As part of the change of plea process, appellant initialed the applicable paragraphs of the "Felony Advisement of Rights, Waiver and Plea Form," including the following provision:

> "2. **ALIEN STATUS**: I understand that if I am not a Citizen of the United States, my guilty or no contest plea will result in my deportation, exclusion from admission to the United States, and denial of naturalization under the laws of the United States. **Deportation is mandatory for some offenses. I have fully discussed this matter with my attorney and understand the serious immigration consequences of my plea**." (Boldface in original.)

Appellant signed a declaration under penalty of perjury that she had read, understood, and initialed each item, and that everything on the form was true and correct. Appellant's attorney, J.M. Irigoyen, signed a statement that he had reviewed the form with his client and explained the direct consequences that would result from a plea of guilty or no contest, including "any possible immigration consequences that may result from this plea," and that he was satisfied his client understood "these things." The form also contained a statement signed by a Spanish language interpreter, attesting that the interpreter had been sworn or had a written oath on file, and certifying that the interpreter translated the entire form to appellant; appellant stated to the interpreter that she

---

[2] The minutes of the hearing reflect appellant changed her plea, with respect to both counts, to nolo contendere and was then found guilty by the court. The reporter's transcript of the change of plea hearing shows appellant pled guilty to both counts. The discrepancy is immaterial for purposes of this appeal.

understood the contents of the form; and appellant initialed and signed the form in the interpreter's presence.

At the change of plea hearing, appellant was assisted by a certified Spanish language interpreter. In response to the trial court's inquiry, appellant acknowledged that she signed, dated, and initialed the form; she understood everything on that form; and she did not have any questions about what could happen if she entered a plea.

On January 3, 2014, imposition of sentence was suspended as to count 1, and appellant was placed on probation for three years on various terms and conditions, including that she serve 180 days in jail. Sentence on count 2 was stayed pursuant to section 654.

On December 6, 2016, appellant filed a petition for writ of habeas corpus, alleging her conviction should be vacated, and she should be allowed to withdraw her plea, because she received ineffective assistance of counsel based on defense counsel's failure to advise her of the adverse immigration consequences that could result from her plea. Appellant, a citizen of Mexico and lawful permanent resident of the United States, asserted she was now facing removal (deportation) as a result of her plea, and that she would have exercised her right to a jury trial had she been aware of the immigration consequences at the time she pled nolo contendere.[3]

On January 26, 2017, appellant's petition was denied. The trial court ruled it had no jurisdiction to adjudicate the petition, since appellant was no longer in actual or constructive custody; hence, under section 1474, there was no habeas corpus remedy as a matter of law.

Appellant moved for reconsideration, in part on the ground the court failed to take into account section 1473.7, which took effect on January 1, 2017, and permitted a person

---

[3] We use the terms "deportation" and "removal" interchangeably.

5.

no longer in custody to prosecute a motion to vacate a conviction. In response, the trial court reopened the habeas proceeding.

On September 27, 2017, an evidentiary hearing was held. The court took judicial notice of its file in appellant's underlying criminal case. It also took judicial notice of federal documents seeking appellant's deportation.[4]

---

[4] The trial court's findings were not derived entirely from written declarations and other documents. There was an evidentiary hearing in which appellant testified. At that hearing, the prosecutor objected, on hearsay grounds, to declarations submitted by appellant and her current attorney. The court agreed the declarations were hearsay and stated it would not consider the one it read before learning of the People's objection. The dissent concludes "an appellate court obligated to conduct an independent review of the totality of the circumstances in accordance with *Vivar* and *Espinoza* is not bound by an erroneous evidentiary ruling as to declarations, which are in the cold part of the record" (dis. opn. *post*, at p. 4); proclaims "the hearsay objection to those declarations should have been overruled" (*id.* at p. 3); and considers "additional facts" taken from them (*id.* at pp. 3-4). First, in her supplemental brief, appellant does not challenge the court's hearsay ruling. As a result, we deem any issues regarding its correctness forfeited. (See *Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4.) Without a challenge to the ruling by either party, its propriety falls outside the issues presented for review. Second, "[w]e know of no rule that would authorize us in any way to consider 'excluded evidence' " on appeal. (*Shepherd v. Turner* (1900) 129 Cal. 530, 532; see *Aton Center, Inc. v. United Healthcare Ins. Co.* (2023) 93 Cal.App.5th 1214, 1227, fn. 4 [evidentiary rulings excluding evidence from consideration are binding where the appellant did not dispute said rulings on appeal].) Third, we know of no authority for the proposition that, in a case such as this, an evidentiary ruling can or should be ignored. We are not convinced that either *Vivar* or *Espinoza* dictate otherwise. In any event, these "additional facts" referred to by the dissent detailed appellant's ties to the United States, which "are an important factor in evaluating [prejudice] under section 1473.7 because they shed light on a defendant's immigration priorities" (*Espinoza*, *supra*, 14 Cal.5th at p. 321); the circumstances leading up to her 2013 arrest; her lack of criminal history at the time of her plea; and Irigoyen's alleged failure to inform her about a possible entrapment defense. (See dis. opn. *post*, at pp. 4-5.) None of these "additional facts" impact our analysis on whether appellant did or did not " 'meaningfully understand' or 'knowingly accept' the actual or potential adverse immigration consequences of [her] plea . . . ." (*People v. Mejia* (2019) 36 Cal.App.5th 859, 862 (*Mejia*); see *Espinoza*, *supra*, 14 Cal.5th at p. 319 ["The defendant must first show that he [or she] did not meaningfully understand the immigration consequences of his [or her] plea. Next, the defendant must show that his [or her] misunderstanding constituted prejudicial error."].)

At the hearing, appellant testified that she was currently 59 years old, came to the United States when she was 19 years old, and became a lawful permanent resident in 1985. She was married; she had five children in the United States, three of whom were lawful permanent residents and two of whom were citizens. She had 14 grandchildren, and took care of two of them three times a week. Her mother was deceased, but her father resided in Fresno.

Following her arrest in 2013, appellant retained Irigoyen, who passed away prior to the current proceedings. During the course of Irigoyen's representation, appellant advised him that she was a lawful permanent resident. She pled guilty to the charges because Irigoyen told her that she had to. He did not tell her that if she pled guilty, she would almost certainly be deported. Had he told her that, she would have gone to trial, because she did not want to be sent to Mexico. Appellant acknowledged her signature and initials were on the "Felony Advisement of Rights, Waiver and Plea Form," but she did not recall going over it with Irigoyen before she entered her plea, and the paragraph about alien status was never read to her. She was never told she could be deported. The document was never read to her. Irigoyen told her to sign and initial it. She did not recall having an interpreter read the document to her, or the court asking if she understood everything on the form. She never thought there was anything on the form concerning deportation. Irigoyen, who did not speak Spanish, never brought an interpreter to talk to her. The only time she talked to an interpreter was in court, never outside of court.

On October 16, 2017, the trial court denied the petition for writ of habeas corpus. In its written ruling, the court noted it was unable to hear testimony from Irigoyen; however, in opposition to appellant's testimony, the court had a record of what Irigoyen did by virtue of the plea form, change of plea transcript, and the court file. The court summarized those documents, and found the plea form and plea colloquy indicated Irigoyen properly advised appellant regarding the immigration consequences of entering

a plea.  The court also observed that at the time of sentencing, appellant was advised she could not reenter the United States without proper authorization, and she signed her terms and conditions of probation, which also contained such an advisement.  The court found the foregoing "belie[d]" appellant's claim that she entered her plea without proper immigration advice.  The court concluded appellant's claims were post hoc assertions that were contradicted by the record of the plea.

Appellant moved for reconsideration or modification of the order on the grounds the trial court failed to adjudicate her motion to vacate her conviction pursuant to section 1473.7, and did not address whether she had the ability meaningfully to understand, defend against, or knowingly accept the actual potential immigration consequences of her plea.  She also argued the court failed to rely on applicable state and federal law.

On November 6, 2017, the court denied the motion for reconsideration.  It concluded the evidence before it failed to show the conviction was legally invalid within the provisions of section 1473.7, subdivision (a)(1).  Accordingly, it also denied appellant's application to vacate the conviction pursuant to that statute.

**DISCUSSION**

California has long required that when a defendant in a criminal case is considering pleading guilty or no contest, he or she must be advised of the potential immigration consequences of such a plea.  Thus, section 1016.5, subdivision (a) has provided, since its enactment in 1977:  "Prior to acceptance of a plea of guilty or nolo contendere to any offense punishable as a crime under state law, . . . the court shall administer the following advisement on the record to the defendant:  [¶]  If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States."  If the advisement is not given and the defendant shows conviction of the offense to which he or she pled may have one of the specified consequences, the court, on defendant's motion, is

required to vacate the judgment and permit the defendant to withdraw the plea of guilty or no contest and enter a plea of not guilty. (*Id.*, subd. (b).)

Because the statutory advisement only tells a defendant a conviction *may* have specified immigration consequences, the giving of the advisement does not bar a noncitizen defendant from moving to withdraw a plea based on ignorance of his or her specific immigration consequences. (*People v. Patterson* (2017) 2 Cal.5th 885, 889 (*Patterson*); see § 1018.) As the California Supreme Court has observed: "[F]or many noncitizen defendants deciding whether to plead guilty, the 'actual risk' that the conviction will lead to deportation—as opposed to general awareness that a criminal conviction 'may' have adverse immigration consequences—will undoubtedly be a 'material matter[]' that may factor heavily in the decision whether to plead guilty. [Citations.]" (*Patterson*, *supra*, at p. 896.) Moreover, "receipt of the section 1016.5 advisement does not bar a criminal defendant from challenging his conviction on the ground that his counsel was ineffective in failing to adequately advise him about the immigration consequences of entering a guilty plea. [Citation.]" (*Ibid.*)

In general terms, to succeed on a claim of ineffective assistance of counsel, a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) a reasonable probability exists that but for counsel's errors, the result of the proceeding would have been different. (*Strickland v. Washington* (1984) 466 U.S. 668, 688, 694.) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Id.* at p. 694.)

The United States Supreme Court addressed the intersection between advisement of immigration consequences and the effective assistance of counsel in criminal prosecutions in *Padilla v. Kentucky* (2010) 559 U.S. 356 (*Padilla*). The high court noted that changes in federal immigration law had made deportation virtually inevitable for noncitizens convicted of particular classes of criminal offenses; hence, "[t]he importance of accurate legal advice for noncitizens accused of crimes has never been more

important," as removal is an integral part of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes. (*Id*. at p. 364.)

Addressing *Strickland*'s first prong, the court concluded: "The weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation. [Citations.]" (*Padilla*, *supra*, 559 U.S. at p. 367.) The court acknowledged immigration law can be complex. Accordingly, it determined, "When the law is not succinct and straightforward . . . , a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, as it [is in cases involving all controlled substances convictions, for which removal is presumptively mandatory except for the most trivial marijuana possession offenses], the duty to give correct advice is equally clear." (*Id*. at p. 369, fn. omitted.) The high court did not decide whether Padilla had shown prejudice under *Strickland*'s second prong, as required to entitle him to relief on his claim. (*Padilla*, *supra*, at p. 369.) It noted, however, that "to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances. [Citation.]" (*Id*. at p. 372.)

*Padilla* was decided before appellant pled guilty in the present case to what clearly was a presumptively deportable offense. (See, e.g., 8 U.S.C. § 1227(a)(2)(B)(i).) Subsequently, effective January 1, 2016, the Legislature codified *Padilla* and related California case law. (§ 1016.2; Stats. 2015, ch. 705, § 1.) At the same time (Stats. 2015, ch. 705, § 2), it mandated that defense counsel provide "accurate and affirmative advice" about the immigration consequences of a proposed disposition and defend against those consequences (§ 1016.3, subd. (a)), and that the prosecution consider avoidance of immigration consequences in the plea negotiation process (*id*., subd. (b)). The Legislature made it clear, however, that the new requirements did not change the requirements of section 1016.5. (§ 1016.3, subd. (c).)

The Legislature followed the statutory codification of *Padilla* with the enactment, effective January 1, 2017, of section 1473.7. (Stats. 2016, ch. 739, § 1.) As it existed at the time of the proceedings in the present case, section 1473.7 provided, in pertinent part: "(a) A person no longer imprisoned or restrained may prosecute a motion to vacate a conviction . . . for . . . the following reason[]: [¶] (1) The conviction . . . is legally invalid due to a prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere."

Effective January 1, 2019, the Legislature added the following clarification to subdivision (a)(1) of section 1473.7 (Stats. 2018, ch. 825, § 2): "A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel." (Accord, *Mejia*, *supra*, 36 Cal.App.5th at pp. 861-862; see *Vivar*, *supra*, 11 Cal.5th at p. 529.) In her reply brief, appellant relied on this amendment to assert that her case "does not fall simply on whether or not the Superior Court has made a proper finding of ineffective assistance of counsel. The broader question before this court is whether under the circumstances of this case, and consistent with the interests of justice and the findings and declarations made in section 1016.2 of the Penal Code, . . . the Appellant met the standard for legal invalidity now required by P.C. §1473.7."**5**

---

**5** As a general proposition, points raised for the first time in a reply brief will not be considered unless good reason is shown for failure to present them earlier. (*People v. Adams* (1990) 216 Cal.App.3d 1431, 1441, fn. 2; *People v. Jackson* (1981) 121 Cal.App.3d 862, 873; see *People v. Carrasco* (2014) 59 Cal.4th 924, 990.) While appellant could not have addressed the amendment in her opening brief, which was filed before the amendment went into effect, she should have requested permission to file a supplemental brief, rather than raising the issue in a reply brief or under the guise of supplemental authorities. (See *Mejia*, *supra*, 36 Cal.App.5th at p. 865.) We did not request supplemental briefing from either party, however, because the legislation merely clarified the law as it has always existed, and our conclusions are not affected by the clarification.

Because the amendment is a clarification of existing law, at least two Courts of Appeal have held—one with the agreement of both parties—that it applies to nonfinal judgments. (*Mejia*, *supra*, 36 Cal.App.5th at p. 865; *People v. Camacho* (2019) 32 Cal.App.5th 998, 1007 (*Camacho*).) In the trial court, appellant argued ineffective assistance of counsel, but also based her claim on the grounds of section 1473.7, subdivision (a)(1). Accordingly, even though her motion was based on errors by her counsel at the time she pled guilty, she need not establish a Sixth Amendment violation under *Strickland* standards. (*Camacho*, *supra*, at p. 1008.) Rather, "to establish a 'prejudicial error' under section 1473.7, [appellant] need only show by a preponderance of the evidence: (1) [s]he did not 'meaningfully understand' or 'knowingly accept' the actual or potential adverse immigration consequences of the plea; and (2) had [s]he understood the consequences, it is reasonably probable [s]he would have instead attempted to 'defend against' the charges." (*Mejia*, *supra*, 36 Cal.App.5th at p. 862; see *Vivar*, *supra*, 11 Cal.5th at pp. 528-530.)

At all times, section 1473.7, subdivision (e)(3) has provided that if the court grants the motion to vacate the conviction, the court shall permit the moving party to withdraw his or her plea of guilty or no contest. A decision whether to deny a motion to withdraw a guilty or no contest plea is reviewed for abuse of discretion (e.g., *People v. Fairbank* (1997) 16 Cal.4th 1223, 1254), as is a motion to vacate a conviction under section 1016.5 (e.g., *People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 192). In *Vivar*, *supra*, 11 Cal.5th 510, the California Supreme Court established that orders granting or denying a motion to vacate a conviction under section 1473.7 are subject to independent review on appeal. (See *Vivar*, *supra*, at pp. 523-528.) " '[U]nder independent review, an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law.' [Citation.] When courts engage in independent review, they should be mindful that ' "[i]ndependent review is *not* the equivalent of de novo review . . . ." ' [Citation.] An appellate court may not simply second-guess factual findings that are

based on the trial court's own observations.  [Citations.]  . . .  [F]actual determinations that are based on ' "the credibility of witnesses the [superior court] heard and observed" ' are entitled to particular deference, even though courts reviewing such claims generally may ' "reach a different conclusion [from the trial court] on an independent examination of the evidence . . .  even where the evidence is conflicting." '  [Citation.]  In section 1473.7 proceedings, appellate courts should similarly give particular deference to factual findings based on the trial court's personal observations of witnesses.  [Citation.]  Where . . . the facts derive entirely from written declarations and other documents, however, there is no reason to conclude the trial court has the same special purchase on the question at issue; as a practical matter, '[t]he trial court and this court are in the same position in interpreting written declarations' when reviewing a cold record in a section 1473.7 proceeding.  [Citation.]  Ultimately it is for the appellate court to decide, based on its independent judgment, whether the facts establish prejudice under section 1473.7." (*Id.* at pp. 527-528, fns. omitted; accord, *Espinoza*, *supra*, 14 Cal.5th at pp. 319-320.)

Whatever Irigoyen's omissions may or may not have been,[6] appellant has not established—by a preponderance of the evidence—the prejudice prong of *Strickland* (see *In re Scott* (2003) 29 Cal.4th 783, 811) or, with respect to section 1473.7, subdivision (a)(1), that prejudicial error damaged her ability to meaningfully understand or knowingly accept the immigration consequences of her plea.  The written plea form advised, in no uncertain terms, that appellant's guilty or no contest plea *would* result in her deportation, exclusion from admission to the United States, and denial of naturalization under the laws of the United States.[7]  (See *People v. Olvera* (2018) 24

---

[6] The dissent simultaneously asserts "the absence of [Irigoyen's testimony or files] was unfairly detrimental to appellant's application" (dis. opn. *post*, at p. 12) and acknowledges such testimony or files "may have supported *or undermined* appellant's claims of error and prejudice" (*id*. at p. 11, italics added).

[7] Where section 1016.5 is concerned, "[a] court 'may rely upon a defendant's validly executed waiver form as a proper substitute for personal admonishment.'

13.

Cal.App.5th 1112, 1114-1115 (*Olvera*) [the defendant signed form acknowledging his no contest plea " 'will, now or later, result in . . . deportation, exclusion from admission or readmission' "]; cf. *Vivar*, *supra*, 11 Cal.5th at pp. 519, 533 [plea form advised that deportation was a possibility]; see also *Espinoza*, *supra*, 14 Cal.5th at pp. 318, 320 [court advised the defendant that conviction "may" have immigration consequences].)[8] Irigoyen, an officer of the court, attested that he had reviewed the form with appellant and explained any possible immigration consequences, and he was satisfied she understood. (See *Olvera*, *supra*, at p. 1115 [defense counsel " 'explained the direct and indirect consequences of [a no contest] plea,' to [the defendant]"]; cf. *Espinoza*, *supra*, 14 Cal.5th at p. 318 [the defendant "never discussed the immigration consequences of the

---

[Citation.]" (*People v. Gutierrez* (2003) 106 Cal.App.4th 169, 175; see *People v. Araujo* (2016) 243 Cal.App.4th 759, 762; *People v. Quesada* (1991) 230 Cal.App.3d 525, 535-536.) We see no reason a court passing upon a claim of ineffective assistance of counsel or a motion to vacate brought pursuant to section 1473.7, cannot similarly rely on the form as evidence concerning advisements given the moving party in such a proceeding. Regardless of whether an advisement from a source other than defense counsel is relevant to the question whether counsel's performance was deficient (see *U.S. v. Rodriguez-Vega* (9th Cir. 2015) 797 F.3d 781, 787), it is manifestly relevant to the issue of prejudice (see *U.S. v. Kayode* (5th Cir. 2014) 777 F.3d 719, 728-729).

**8** The dissent asserts "the language in the plea form indicating appellant 'will' be deported is confusing and ambiguous." (Dis. opn. *post*, at pp. 8-9.) On the contrary, the first sentence of the pertinent paragraph unequivocally reads: "I understand that if I am not a Citizen of the United States, my guilty or no contest plea *will* result in my deportation, exclusion from admission to the United States, and denial of naturalization under the laws of the United States." (Italics added.) This caveat is not negated by the ensuing sentence "**Deportation is mandatory for *some* offenses.**" (Italics added.) When considered in tandem, these sentences merely indicate that the crime to which the signatory will plead guilty or nolo contendere constitutes one of these mandatorily deportable offenses. In fact, appellant agreed to enter a guilty or nolo contendere plea to sale or transportation of marijuana, inter alia. (See 8 U.S.C. § 1227, subd. (a)(2)(B)(i) ["Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance . . . , other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable."].)

plea with his attorney"]; *ibid.* [the defendant "relied on the reassurance of his attorney's assistant that, if he pleaded no contest, 'everything was going to be fine' "].)[9]  An interpreter, who had a written oath on file, certified having translated the entire form to appellant, and that appellant stated she understood the form's contents.  (*People v. Perez* (2018) 19 Cal.App.5th 818, 829-830.)  Appellant declared, under penalty of perjury, that she understood each item.  She verbally acknowledged to the court, during the change of plea hearing, that she signed the form and understood everything on it, and that she did not have any questions concerning what could happen if she pled guilty.[10]  (Cf. *Espinoza*,

---

[9] The dissent cites *People v. Curiel* (2023) 92 Cal.App.5th 1160, *People v. Manzanilla* (2022) 80 Cal.App.5th 891, *People v. Lopez* (2021) 66 Cal.App.5th 561, *People v. Rodriguez* (2021) 60 Cal.App.5th 995, and *Camacho*, *supra*, 32 Cal.App.5th 998 for the proposition "the presence of a strongly worded advisement stating a defendant 'will' be deported does not end the inquiry."  (Dis. opn. *post*, at p. 9; see *id*. at pp. 9-10.)  However, those cases—in contrast to the one at bar—presented evidence of defense counsel's failure to explain the immigration consequences (see *People v. Curiel*, *supra*, at pp. 1175-1177; *People v. Manzanilla*, *supra*, at pp. 905-906; *People v. Lopez*, *supra*, at p. 578; *People v. Rodriguez*, *supra*, at p. 1004; *Camacho*, *supra*, at p. 1009) and are thus inapposite.

[10] The dissent emphasizes appellant testified she "was really nervous" during the plea proceeding at the September 27, 2017 evidentiary hearing and concludes this "supports her assertion that she did not understand the adverse immigration consequences of the plea."  (Dis. opn. *post*, at p. 5.)  Assuming, arguendo, nervousness may influence an individual's ability to meaningfully understand or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere, the record indicates—prior to the change of plea hearing—appellant initialed the applicable paragraphs of the "Felony Advisement of Rights, Waiver and Plea Form"; she signed the declaration under penalty of perjury that she had read, understood, and initialed each item, and that everything on the form was true and correct; Irigoyen reviewed the form and discussed the immigration consequences that would result from the plea with her; and a Spanish language interpreter translated the entire form to appellant and was told by appellant she understood the contents of the form.  Nothing in the record suggests appellant was nervous then.

*supra*, at p. 318 [court provided general advisement and "made no further inquiry into [the defendant]'s understanding or offer to answer any questions he might have had"].)[11]

This is not a case in which a defendant was advised his or her plea *may* or *could* have the consequence of deportation (see *Espinoza*, *supra*, 14 Cal.5th at pp. 318, 320; *Vivar*, *supra*, 11 Cal.5th at pp. 519, 533; *People v. Lopez* (2022) 83 Cal.App.5th 698, 705, 712; *People v. Soto* (2022) 79 Cal.App.5th 602, 605, 609; *Alatorre*, *supra*, 70 Cal.App.5th at p. 769, fn. 30; *People v. Ruiz* (2020) 49 Cal.App.5th 1061, 1063, 1065-1066; *Mejia*, *supra*, 36 Cal.App.5th at p. 863; see also *Patterson*, *supra*, 2 Cal.5th at p. 898), nor is it one in which a defendant for whom the possibility of deportation was a determining factor in deciding whether to plead guilty was erroneously advised or led to believe the plea *would not* subject him or her to deportation (see *Lee v. United States* (2017) 582 U.S. 357, 360-362, 364-371; *Camacho*, *supra*, 32 Cal.App.5th at p. 1001). Rather, the immigration consequences were clear, and the advisement given to appellant

---

[11] The dissent claims "the strongest objective evidence of appellant's subjective [lack of] understanding is the fact that [in 2015] she obtained permission from probation to travel to Mexico and returned on an international flight, which subjected her to the scrutiny of immigration officials at Los Angeles International Airport." (Dis. opn. *post*, at p. 10; see *id.* at pp. 5-6.) The dissent cites *People v. Alatorre* (2021) 70 Cal.App.5th 747 (*Alatorre*), which held:

> "It goes without saying that someone who understood his criminal conviction made him automatically deportable would not voluntarily contact immigration authorities and advise them of his presence in the country. This alone demonstrates it is more likely than not that [appellant] failed to 'meaningfully understand' the consequences of his plea." (*Alatorre*, *supra*, 70 Cal.App.5th at pp. 769-770.)

In contrast to the case at bar, *Alatorre* involved a plea form that "only indicated that the plea '*could* result in my being deported.' " (*Alatorre*, *supra*, 70 Cal.App.5th at p. 769, fn. 30.)

was equally clear.  (See *Olvera*, *supra*, 24 Cal.App.5th at p. 1117; *People v. Perez*, *supra*, 19 Cal.App.5th at pp. 829-830.)**12**

The trial court's implied finding that appellant's post hoc assertions lacked credibility in light of the contemporaneous record of her plea (see *Lee v. United States*, *supra*, 582 U.S. at p. 369), is entitled to particular deference in light of the court's personal observations of appellant at the evidentiary hearing (see *Vivar*, *supra*, 11 Cal.5th at pp. 527-528).  Exercising our independent review while giving due deference to the trial court's credibility determination and factual findings, we conclude appellant is not entitled to have her conviction vacated.

To prevail under section 1473.7, "[t]he defendant must first show that he [or she] did not meaningfully understand the immigration consequences of his [or her] plea. Next, the defendant must show that his [or her] misunderstanding constituted prejudicial error." (*Espinoza*, *supra*, 14 Cal.5th at p. 319.)**13**  Having decided appellant failed to establish the former, we need not address the latter.

## DISPOSITION

The order is affirmed.

DETJEN, Acting P. J.

I CONCUR:


SMITH, J.

---

**12** "The admonition was boilerplate, but it was unequivocal and accurate." (*Olvera*, *supra*, 24 Cal.App.5th at p. 1117.)

**13** The structure of this analysis protects the rights of both defendants and the People.  It does not support undervaluing the advisements given to defendants by their trial attorneys, the information in the plea form read to defendants in their language, the questions asked of defendants by the trial court, defendants' statements to the trial court, and the findings by the trial court.  To do so would decay the integrity of the change of plea hearing rendering pleas an ineffective vehicle to finality.

**DE SANTOS, J., Dissent**

I respectfully dissent and would reverse the trial court's order denying appellant's application pursuant to Penal Code[1] section 1473.7, subdivision (a)(1) and direct the court to vacate the conviction.

I agree with the majority that the trial court acted properly in treating the papers appellant filed in 2016 and 2017 as including a motion to vacate under section 1473.7, subdivision (a)(1). I also agree the appeal is timely and this court has the authority to consider the merits of that motion while maintaining the habeas caption.

## I.      Overview of Section 1473.7

To obtain relief under section 1473.7, subdivision (a)(1), an appellant must meet at least five requirements. Three are not disputed in this case. First, appellant has shown she "is no longer in criminal custody" (§ 1473.7, subd. (a))—a point made in the majority's first footnote and not contested by the Attorney General. Second, her motion is timely under either the former or current version of section 1473.7, subdivision (b) because a removal order has yet to be issued. (See *People v. Perez* (2021) 67 Cal.App.5th 1008, 1013–1016 [initial and current timeliness provisions in § 1473.7].) Third, the pending immigration case against appellant establishes that her conviction has the potential adverse immigration consequence of removal from the United States. (§ 1473.7, subd. (e)(1); see *People v. Gregor* (2022) 82 Cal.App.5th 147, 158.)

The two disputed statutory requirements are error—that is, the appellant's lack of a meaningful understanding of the immigration consequences of the plea—and prejudice. These two requirements establish a conviction is legally invalid and were described in *People v. Espinoza* (2023) 14 Cal.5th 311 (*Espinoza*) as follows:

---

[1]      All further undesignated statutory references are to the Penal Code.

"To prevail under section 1473.7, a defendant must demonstrate that his conviction is 'legally invalid due to prejudicial error damaging [his or her] ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence.' (§ 1473.7, subd. (a)(1).) The defendant must first show that he did not meaningfully understand the immigration consequences of his plea. Next, the defendant must show that his misunderstanding constituted prejudicial error." (*Espinoza*, *supra*, 14 Cal.5th at p. 319.) The standard of proof is the preponderance of the evidence. (§ 1473.7, subd. (e)(1).)

Our Supreme Court has explained that to show "prejudicial error" in the context of section 1473.7, an appellant must demonstrate "a reasonable probability[2] that [she] would have rejected the plea if [she] had correctly understood its actual or potential immigration consequences." (*People v. Vivar* (2021) 11 Cal.5th 510, 529 (*Vivar*); *Espinoza*, *supra*, 14 Cal.5th at p. 319.)

When assessing whether a reasonable probability has been established, courts *must* consider the totality of the circumstances. (*Espinoza*, *supra*, 14 Cal.5th at pp. 320, 325; *Vivar*, *supra*, 11 Cal.5th at p. 529.) Particularly relevant factors include (1) the appellant's ties to the United States, (2) the importance the appellant placed on avoiding removal, (3) the appellant's priorities in seeking a plea bargain, and (4) whether the appellant had reason to believe an immigration-neutral negotiated disposition was possible. (*Vivar*, at pp. 529–530.) "Also relevant are the defendant's probability of obtaining a more favorable outcome if he had rejected the plea, as well as the difference

---

2    Our Supreme Court has not defined the meaning of a reasonable probability in the context of a section 1473.7 motion. The Courts of Appeal have stated the reasonable probability standard does not mean more likely than not, but means merely a reasonable chance, which is more than an abstract possibility. (*People v. Curiel* (2023) 92 Cal.App.5th 1160, 1178; *People v. Soto* (2022) 79 Cal.App.5th 602, 610; *People v. Rodriguez* (2021) 68 Cal.App.5th 301, 324.) In other words, a reasonable probability is a probability sufficient to undermine confidence in the outcome. (*Rodriguez*, at p. 324.)

2.

between the bargained-for term and the likely term if he were convicted at trial. [Citation.] These factors are not exhaustive, and no single type of evidence is a prerequisite to relief." (*Espinoza*, at p. 320.)[3]

## II. Omitted Material Facts

Based on the established principle that courts must consider the totality of the circumstances when evaluating prejudice and my conclusion that the totality of the circumstances also must be considered when evaluating an appellant's understanding of the immigration consequences of a plea, my next step is to supplement the historical facts set forth in the majority opinion.

A. Role of Supporting Declarations

Some of the additional facts are taken from the declarations of appellant and her attorney submitted in support of appellant's petition for writ of habeas corpus and exhibits to appellant's petition for writ of habeas corpus, which she signed under penalty of perjury. The trial court sustained a hearsay objection to the declarations and the majority's review of the record has not considered them. For purposes of the section 1473.7 motion, the hearsay objection to those declarations should have been overruled. With the benefit of *Espinoza* and *Vivar*, which were not available to the trial court, it is clear that evidence supporting a section 1473.7 motion "includes facts provided by declarations." (*Espinoza*, *supra*, 14 Cal.5th at p. 321; see *Vivar*, *supra*, 11 Cal.5th at p. 528 [facts derived "entirely from written declarations and other documents"]; cf. Code Civ. Proc., § 2009 [affidavits may be used to support a civil

---

[3] Although *Vivar* and *Espinoza* are not as explicit as to whether the totality of the circumstances must be considered when determining whether the appellant has shown she did not meaningfully understand the immigration consequences of the plea, I conclude the totality must be considered. Showings of misunderstanding and prejudice both address the appellant's subjective state of mind and neither *Vivar* nor *Espinoza* suggest that the totality of the circumstances test should not be applied to the statute's requirement of misunderstanding.

3.

motion]; Cal. Rules of Court, rule 3.1306(a) [evidence related to a civil motion usually is presented by declaration].)  Thus, I have considered the declarations.  In contrast to the majority, I conclude an appellate court obligated to conduct an independent review of the totality of the circumstances in accordance with *Vivar* and *Espinoza* is not bound by an erroneous evidentiary ruling as to declarations, which are in the cold part of the record.

B.  Personal Details

Appellant was born in Mexico in August 1958 and came to the United States in 1978.  She takes care of two of her 14 grandchildren three times a week and has done so since they were born because their parents work graveyard shifts.  (See *Espinoza*, *supra*, 14 Cal.5th at p. 323 [the appellant was the caregiver for his elderly parents, which was relevant evidence of his community ties].)  The two grandchildren sleep at appellant's house from Friday to Saturday.  By looking after the grandchildren, appellant helps her son and the grandchildren's mother maintain employment.  Appellant's role as a part time caretaker is relevant because it shows her ties to her grandchildren and her son.

Appellant's December 2016 declaration describes her relationship with one of her United States citizen sons, who is "gravely mentally disabled."  Appellant asserts he had been living mostly in the streets, she had been trying to take care of him, and in 2014 she was attempting to borrow $2,000 to buy a mobile home for him so he would no longer be homeless.  The person appellant tried to borrow the money from said he did not have it to lend, but he put appellant in touch with someone who might help her raise the money.  Appellant then received several calls from a man in the State of Washington.  The December 2016 declaration and appellant's supplemental declaration of April 2017 describe the circumstances that led to appellant meeting the man in a parking lot and her arrest for transporting marijuana.  The December 2016 declaration asserts the possibility of an entrapment defense and asserts her plea attorney never discussed that defense with her.

4.

C. Community Ties

Appellant's community ties are illustrated by the letters attached to her declaration as an exhibit. A November 2016 letter from St. Anne's Catholic Church in Porterville described appellant as a faithful parishioner and stated she and her family had attended Sunday Mass regularly since August 2010. In *Espinoza*, the court stated the appellant's church attendance was among the facts that lent credence to the assertion in his declaration "that his community ties were important to him at the time of his plea." (*Espinoza*, *supra*, 14 Cal.5th at p. 323.) A letter from Maria I. Loredo states she has known appellant for 40 years and appellant is a very close friend, a very honest person, an excellent, efficient worker who had gotten along with her coworkers. The letter also states appellant "is very caring for others anytime someone needs something she is there." Other letters from family friends describe appellant as a hard worker, good person, and dedicated to her children. (See *Espinoza*, at p. 317 [letters from family, friends, community members, clients and employers documented appellant's family ties, community connections and work history].)

D. Criminal History

Another relevant fact is appellant's lack of a criminal history. Appellant asserts this is among the factors that would have caused her to go to trial on the entrapment defense if she had been told about it. (See *Espinoza*, *supra*, 14 Cal.5th at p. 324 ["Espinoza had no prior criminal history at the time of his plea"].) Also, the absence of a criminal history lends credence to her testimony that she "was really nervous" during the plea proceeding. Her nervousness, in turn, supports her assertion that she did not understand the adverse immigration consequences of the plea.

E. Contact with Immigration Authorities

The circumstances under which appellant came to the attention of the United States Department of Homeland Security (Homeland Security) also are relevant to

5.

whether appellant is entitled to relief. Appellant testified that, while she was on probation, she obtained permission from probation to visit Mexico. She stated: "I went to Mexico, and I didn't know that I couldn't go to Mexico. And then when I was returning here, I was stopped in Los Angeles, and they took my resident alien … document from me." Appellant's encounter with immigration officials is described in the notice to appear (Form I-862) issued by Homeland Security and dated December 13, 2015. The notice stated appellant arrived at Los Angeles International Airport on December 13, 2015, and applied for admission to the United States as a lawful permanent resident. It also stated appellant had been convicted of a felony for violating Health and Safety Code sections 11360, subdivision (a) and 11359 and, therefore, was subject to removal for having been convicted of a crime involving moral turpitude. It informed appellant that a hearing date had not been set.

## III. Appellant's Misunderstanding

### A. Subjective Standard

Cases interpreting the text of section 1473.7 have uniformly concluded "that a petitioner's own subjective error qualifies for relief under the statute if the evidence shows he or she misunderstood the immigration consequences of a plea deal." (*People v. Alatorre* (2021) 70 Cal.App.5th 747, 769 (*Alatorre*).) In other words, "the focus of the inquiry in a section 1473.7 motion is on the 'defendant's own error ....' " (*People v. Mejia* (2019) 36 Cal.App.5th 859, 871, quoting *People v. Camacho* (2019) 32 Cal.App.5th 998, 1009.) In *Mejia*, "the court agreed with the defendant that '[t]he key to the statute is the mindset of the defendant and what he or she understood—or didn't understand—at the time the plea was taken.' " (*Alatorre*, at p. 769.) Accordingly, to obtain relief under section 1473.7, subdivision (a)(1), appellant need not prove (1) the trial court erred in advising her of the immigration consequences of her plea or (2) defense counsel provided ineffective assistance during the plea process.

6.

B.  Scope of Trial Court's Decision

The reporter's transcript of the evidentiary hearing held in September 2017 demonstrates that the attorneys focused on the issue of whether appellant was adequately advised, not her subjective understanding of the immigration consequences.  The trial court's October 2017 order stated:  "Although the court asked that two issues be addressed at the evidentiary hearing the parties agreed that only one issue needed [to] be resolved:  Did Petitioner received proper immigration advice prior to pleading guilty?"  The trial court resolved this issue by concluding, based on "the record of the plea and the sentencing, it does appear that Mr. Irigoyen properly advised Ms. Hernandez regarding the immigration consequence of entering a plea.  Her claims now appear to be '*post hoc* assertions' that are contradicted by the record of the plea."  The trial court's subsequent order of November 2017 tracked the language of section 1473.7, subdivision (a)(1) and stated the application under that provision was denied.  It also stated the application to reconsider the earlier ruling was denied.  The trial court, however, never explicitly addressed appellant's subjective understanding of the immigration consequences.  Thus, I conclude it is not reasonable to interpret the November 2017 order as deciding appellant's subjective understanding at the time of the plea—an issue not presented to the court.  For this reason, it is inappropriate to infer the trial court made the specific implied finding that appellant's assertions regarding her state of mind (whether made in her testimony or declarations) were not credible.

C.  Evaluation of the Evidence of Appellant's Subjective Understanding

The record in this case contains direct evidence of appellant's subjective state of mind.  Her understanding of the immigration consequences of her plea was addressed in both her testimony and her declaration.  During the evidentiary hearing in September 2017, the deputy district attorney asked appellant about the form she signed and initialed when she entered her plea in 2014.

7.

Q. So on that date, you told the Court that you read and understood everything in that form.

A. But I never thought that anything on there was about that because --

Q. Okay.

A. -- I was never told that.

Q. But you told the Court that you understood everything in that form; correct?

A. Yes, because I didn't know that. I didn't know that was --

The deputy district attorney also asked if appellant told the court she did not have any questions, and appellant said: "Yes, because I never thought that it would be anything like that, like deportation. If I would have known – if I would have known, I would have said that then." Similarly, her December 2016 declaration stated: "Had I known about the immigration consequences to pleading to this charge I would never have pled to it."

While relevant, this direct evidence of appellant's state of mind is not accepted at face value. In the context of a section 1473.7 motion, a defendant's assertions as to his or her state of mind must be corroborated with objective evidence. (*Espinoza*, *supra*, 14 Cal.5th at p. 321; *Vivar*, *supra*, 11 Cal.5th at p. 530.) A defendant is not required, however, to submit contemporaneous documentation and "no specific kind of evidence is a prerequisite to relief." (*Espinoza*, at p. 325.) Rather, the totality of the circumstances test "necessarily involves [a] case-by-case examination of the record." (*Ibid*.)

Circumstantial evidence relevant to appellant's state of mind includes the advisements given at the time of the plea. I do not find, however, as the majority does, appellant's written plea form and the plea colloquy to be compelling evidence appellant fully understood the immigration consequences of her plea. Rather, I agree with appellant that the language in the plea form indicating appellant "will" be deported is

8.

confusing and ambiguous. That advisement is followed by the sentence explaining that "some" offenses require mandatory deportation. One possibility is that a defendant receiving this advisement would infer that the second sentence was boilerplate and had no application to his or her particular case. Another possibility is that the defendant would be confused about which sentence applied and would infer from the absence of detailed advice from counsel that his or her offense was among those that did not require deportation. In short, the giving of a strongly worded advisement followed by a sentence that softens or undermines that wording is not compelling evidence that appellant fully understood the grave immigration consequences in the present case. Also, the subsequently imposed probation condition that appellant not reenter the United States "without proper authorization" did not inform appellant that the conviction was for a crime that would result in deportation and bar her readmission to the United States. Instead, it suggests that readmission might be approved.

Furthermore, the presence of a strongly worded advisement stating a defendant "will" be deported does not end the inquiry. In *People v. Manzanilla* (2022) 80 Cal.App.5th 891, the defendant initialed an advisement form stating he "will" be deported. (*Id*. at p. 906.) The court stated the use of the form "did not absolve defense counsel of the duty to advise of immigration consequences" and such a form was not designed, and did not operate, as a substitute for the advice of defense counsel regarding the immigration consequences in a given case. (*Ibid*., quoting *People v. Lopez* (2021) 66 Cal.App.5th 561, 577.) The court also stated: "Even if counsel went over the [advisement] form in detail and [the defendant] read every word in it, there is no evidence that defense counsel fulfilled her duty to give him *specific* advice that he would be subject to mandatory deportation as a result of pleading no contest." (*People v. Manzanilla*, at p. 906.)

9.

Other courts, in considering the totality of the circumstances, have looked beyond an advisement that the defendant will be deported and concluded the defendant was entitled to relief under section 1473.7. (See *People v. Curiel*, *supra*, 92 Cal.App.5th at p. 1175 [a written waiver and a court's advisement that the defendant " 'must expect' her plea 'will result' in deportation did not preclude her from demonstrating that she did not meaningfully understand the immigration consequences of her plea"]; *People v. Lopez*, *supra*, 66 Cal.App.5th at p. 577; *People v. Camacho*, *supra*, 32 Cal.App.5th at p. 1011, fn. 8 ["Although in the trial court [the] defendant was advised that his plea '*will* result' (italics added) in adverse immigration consequences, [the] defendant presented sufficient evidence of his lack of understanding such that the court's advisement cannot be taken as irrebuttable proof that [the] defendant likely would have entered his plea notwithstanding those consequences"]; *People v. Rodriguez* (2021) 60 Cal.App.5th 995, 1003–1004 [the defendant did not meaningfully understand immigration consequences despite signing form that stated " 'this plea … *will* result in my removal/deportation' "].)

In my view, the strongest objective evidence of appellant's subjective understanding is the fact that she obtained permission from probation to travel to Mexico and returned on an international flight, which subjected her to the scrutiny of immigration officials at Los Angeles International Airport.

The strength of the inference drawn from this conduct was discussed by the Fourth Appellate District in a case where the defendant's misguided efforts to become a naturalized citizen brought him to the attention of immigration authorities and triggered his deportation. (*Alatorre*, *supra*, 70 Cal.App.5th at p. 769.) The court stated: "It goes without saying that someone who understood his criminal conviction made him automatically deportable would not voluntarily contact immigration authorities and advise them of his presence in the country. *This alone* demonstrates it is more likely than not that [the defendant] failed to 'meaningfully understand' the consequences of his

plea." (*Id.* at pp. 769–770, italics added.) I agree with these statements about the weight that is logically attributed to a defendant's postconviction conduct that brings him or her to the attention of immigration authorities. (See *Espinoza*, *supra*, 14 Cal.5th at p. 320 [the defendant taking an international flight was not consistent with the behavior of a person who understood the immigration consequences of his convictions, citing *Alatorre* with approval]; see also *People v. Curiel*, *supra*, 92 Cal.App.5th at p. 1177 [appellants' acts of seeking citizenship and lawful residence status after their pleas "w[ere] not consistent with that of individuals who understood that their convictions made them presumptively deportable and ineligible for reentry into the United States"].)

Consequently, I find the evidence of appellant's postconviction conduct that subjected her to the scrutiny of immigration authorities, when considered with the ambiguity of the language in the written plea form, is sufficient to carry appellant's burden of proving by a preponderance of the evidence that she did not meaningfully understand the adverse immigration consequences of her plea. In contrast, the other evidence cited by the majority—that appellant's plea counsel attested he reviewed the written plea form with appellant and explained possible immigration consequences, that an interpreter certified he translated the form, and that appellant acknowledged to the court she understood the form and did not have any questions regarding what could happen during the plea colloquy—are not compelling.

D. Unavailability of Plea Counsel

Before proceeding to the statutory element of prejudice, I will address the fact that appellant's section 1473.7 motion was presented and resolved without any declaration or testimony from appellant's plea counsel. Nothing in the record suggests that the absence of a declaration or testimony from Irigoyen in connection with the habeas proceeding or section 1473.7 motion is the fault of either party. Furthermore, the record shows that the attempts of appellant's appellate counsel to locate and review any files Irigoyen may

11.

have kept in the underlying criminal matter were reasonable and diligent, though ultimately unsuccessful. Irigoyen's testimony or files, if available, may have supported or undermined appellant's claims of error and prejudice. I do not feel the absence of any evidence that might have been in her late attorney's possession should be held against appellant under the uncommon factual circumstances of this case. While neither the trial court nor the majority expressly fault appellant for not presenting evidence in her late attorney's possession that may have assisted her, it appears to me that, incidentally, the absence of this evidence was unfairly detrimental to appellant's application.

A comparable situation arose in *Espinoza*, where the district attorney and Espinoza's counsel represented to the court they had unsuccessfully tried to contact the attorney who, 15 years earlier, had represented Espinoza when he entered his plea. (*Espinoza*, *supra*, 14 Cal.5th at p. 325.) Addressing the absence of evidence from plea counsel, the court stated: "A party seeking relief under section 1473.7 is not required to provide the declaration of plea counsel. (*People v. Manzanilla*[, *supra*,] 80 Cal.App.5th 891, 909.)" (*Ibid*.) Consequently, the absence of additional evidence due to Irigoyen's death and the inability to locate appellant's case file should not be a circumstance that weighs against her.

## IV. Prejudice

Based on my independent review of the evidence, I find that appellant "has demonstrated a reasonable probability that [she] would have rejected the plea offer had [she] understood its immigration consequences." (*Espinoza*, *supra*, 14 Cal.5th at p. 319.) *Espinoza* underscores the relevance and weight of strong community ties in evaluating a claim of prejudice. (*Espinoza*, at pp. 321–322.) In *Espinoza*, the court approved decisions where "the Courts of Appeal have found a defendant's strong community ties to provide compelling evidence in support of a finding of prejudicial error." (*Id*. at

p. 322, citing *People v. Lopez* (2022) 83 Cal.App.5th 698, 708; *People v. Mejia*, *supra*, 36 Cal.App.5th at p. 872; *People v. Camacho*, *supra*, 32 Cal.App.5th at p. 1011.)

Here, the strong and extensive family and community ties appellant has to the United States as set forth in detail above corroborates appellant's testimony that she would not have entered her plea had she understood the immigration consequences. Appellant's ties to her family and community demonstrate a reasonable probability she would have rejected the plea because of its adverse immigration consequences, which would separate her from her family.

## V. Conclusion

For the reasons stated above, I would find appellant (1) has met her burden of proving by a preponderance of the evidence that she did not meaningfully understand the adverse immigration consequences of the conviction resulting from her plea and (2) has established a reasonable probability she would have rejected the plea had she correctly understood those consequences. Because appellant has established both statutory elements, the remedy on appeal should be to reverse the order denying relief under section 1473.7, subdivision (a)(1) and remand the matter to the trial court with directions to enter an order granting her motion to vacate her conviction. (See *Espinoza*, *supra*, 14 Cal.5th at p. 326; *Vivar*, *supra*, 11 Cal.5th at p. 534; see also (*People v. Perez* (2021) 67 Cal.App.5th 1008, 1017.)


DE SANTOS, J.

13.